```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA


  UNITED STATES OF AMERICA,       .
                                  .
            Plaintiff,            .   CR No. 21-0034 (CRC)
                                  .
       v.                         .
                                  .   Washington, D.C.
  THOMAS ROBERTSON,               .   Thursday, April 7, 2022
                                  .   1:58 p.m.
            Defendant.            .
  . . . . . . . . . . . . . . . . .   AFTERNOON SESSION



                      TRANSCRIPT OF JURY TRIAL
             BEFORE THE HONORABLE CHRISTOPHER R. COOPER
                   UNITED STATES DISTRICT JUDGE



     APPEARANCES:

  For Government:                 ELIZABETH A. ALOI, AUSA
                                  RISA BERKOWER, AUSA
                                  U.S. Attorney's Office
                                  555 Fourth Street NW
                                  Washington, DC 20530
                                  (202) 252-7566


  For Defendant:                  MARK M. ROLLINS, ESQ.
                                  CAMILLE WAGNER, ESQ.
                                  Rollins & Chan
                                  419 Seventh Street NW
                                  Washington, DC 20004
                                  (202) 455-5610


  Court Reporter:                 BRYAN A. WAYNE, RPR, CRR
                                  U.S. Courthouse, Room 4704-A
                                  333 Constitution Avenue NW
                                  Washington, DC 20001
                                  (202) 354-3186




  Proceedings reported by stenotype shorthand.
  Transcript produced by computer-aided transcription.
```

C O N T E N T S

TESTIMONY

GEORGE BOBBOUINE:    Direct Examination....................940
                     Cross-Examination.....................942

EDWARD LAVADO:       Direct Examination....................943
                     Cross-Examination.....................945

KATHRYN CAMILIERE:   Direct Examination....................949
                     Cross-Examination.....................953

*   *   *

EXHIBITS RECEIVED

Government Exhibit No. 3000 ...............................951

JURY INSTRUCTIONS ........................................ 969

```
 1                      P R O C E E D I N G S

 2          THE COURT:  Okay.  Any changes to the schedule, folks?

 3          MS. WAGNER:  Your Honor, before we broke I said that we

 4    were going to have zero to one witnesses.  We have two

 5    witnesses.  Each will take five minutes.

 6          THE COURT:  All right.  Since the defense case will be

 7    short, Mr. Robertson, as I'm sure Mr. Rollins has informed

 8    you, every defendant has a right to remain silent and not

 9    testify; but by the same token, every defendant has a right to

10    testify on their own behalf.  Have you spoken with Mr. Rollins

11    about whether to testify in this case or not?

12          THE DEFENDANT:  Yes, I have.

13          THE COURT:  And you've discussed the pros and cons of

14    doing so?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  And are you comfortable with your decision

17    not to take the stand?

18          THE DEFENDANT:  Yes, sir, I am.

19          THE COURT:  All right.  Anything else, Mr. Rollins?

20          MR. ROLLINS:  No, Your Honor.

21          THE COURT:  All right.  Very well.  Let's bring the

22    jury in.

23       (Jury in at 1:59 p.m.)

24          THE COURT:  Okay.  Please be seated, everybody.

25       Ms. Aloi?
```

1          MS. ALOI:  Your Honor, the government rests our case.

2          THE COURT:  Okay.  So, ladies and gentlemen, the

3    government has rested its case-in-chief, meaning it has no

4    more witnesses in its main case.

5       Mr. Rollins?

6       (Bench conference.)

7          MS. WAGNER:  Your Honor, at this time we move for

8    judgment of acquittal pursuant to Federal Rules of Criminal

9    Procedure 29, as no reasonable jury, even in the light most

10   favorable to the government, could find beyond a reasonable

11   doubt that Mr. Robertson committed the crimes charged.

12      Specifically as to Count 1, the government has failed to

13   put on any evidence or testimony that proves that

14   Mr. Robertson's intent at the time was to impede or obstruct

15   an official proceeding.  And they have not proved he acted

16   corruptly.

17      And regarding Counts 3 and 4, the government has failed to

18   prove that Mr. Robertson used or carried the stick as a

19   dangerous or deadly weapon.  There was no testimony or

20   evidence that showed that it was used or carried as a

21   dangerous or deadly weapon.  In fact, the testimony brought

22   out that it was used in a defensive manner only.

23      And for those reasons we ask for a judgment of acquittal on

24   Counts 1, 3, and 4.

25         THE COURT:  Okay.  The Court will reserve on your

1    motion until the jury returns a verdict in the case.

2              MS. WAGNER:  Thank you.

3         (End of bench conference.)

4              THE COURT:  Would the defense like to call their first

5    witness?

6              MR. ROLLINS:  Yes.

7              MS. WAGNER:  Your Honor, the defense will be calling

8    George Bobbouine to the stand.

9              THE COURT:  Very well.

10             GEORGE BOBBOUINE, WITNESS FOR THE DEFENSE, SWORN

11                       DIRECT EXAMINATION

12   BY MS. WAGNER:

13   Q.   Good afternoon.  Could you please tell the jury your name

14   and spell it.

15   A.   Yes, ma'am.  It's George Bobbouine, B-O-B-B-O-U-I-N-E.

16   Q.   And where do you live?

17   A.   Rocky Mount, Virginia.

18   Q.   Do you know the defendant, Mr. Robertson?

19   A.   Yes, I do.

20   Q.   How do you know T.J.?

21   A.   I met T.J. in 2006 at the police department.

22   Q.   And what is your relationship to T.J.?

23   A.   He's a best friend.  Friend.

24   Q.   How often would you say you see T.J.?

25   A.   A month?

1    Q.   A month, a year?

2    A.   About three, four times a month, maybe more.

3    Q.   Have you ever known him to use a walking stick?

4    A.   Yes.

5    Q.   Why does he use a walking stick?

6    A.   When he first started using it, it was -- I want to say

7    back in 2010 or '11.  He got injured in Afghanistan.  He got

8    blown up and he had a big hole in his leg.

9    Q.   Have you seen the injury in his leg?

10   A.   Yes, I have.

11   Q.   And when does he use a walking stick?

12   A.   He only uses it when, like, he's on his feet for long

13   extended periods of time.  When have I seen him using it?  I

14   seen him when he came back from Afghanistan.  It wasn't

15   actually a stick; it was a cane at the time.  He had a cane

16   for his leg where it was draining and stuff.  The injury was

17   pretty bad.

18   Q.   Okay.  And I'm going to direct your attention to the days

19   prior to January 6.  Were you invited to go with T.J. to D.C.

20   on January 6?

21   A.   Yes, I was.

22   Q.   Did you go?

23   A.   No.

24   Q.   Why?

25   A.   I had my wisdom teeth taken out that morning.

1    Q.   And at that time when you were invited, what if anything
2    was the plan?
3    A.   There was no plan.  We were just -- a bunch of the guys
4    were going to go there to listen to the president's speech.
5             MS. WAGNER:  Okay.  Nothing further.
6                         CROSS-EXAMINATION
7    BY MS. ALOI:
8    Q.   Good afternoon.
9    A.   How are you?
10   Q.   I'm good.  Thank you.
11        So you are the defendant's best friend.  Is that right?
12   A.   Yes.
13   Q.   Okay.  But you weren't with him on January 6th, were you?
14   A.   No, ma'am.
15   Q.   And you weren't here for the trial.  Is that right?
16   A.   I was outside, yeah.  I wasn't in here, no.
17   Q.   You weren't in the courtroom?
18   A.   No, ma'am.
19   Q.   So you haven't seen any of the evidence in this case?
20   A.   No, ma'am.
21   Q.   So you don't actually know what happened on January 6, do
22   you?
23   A.   No, ma'am.
24   Q.   And were you aware that the defendant's home was searched
25   on January 19th of last year?

1    A.    I don't remember the exact dates but I know it was a

2    couple times, yes.

3    Q.    Are you aware that law enforcement seized a wooden stick

4    from the defendant's home on that date?

5    A.    Yes, ma'am.

6    Q.    Would you be surprised to learn that the defendant told

7    law enforcement that the wooden stick he carried on January 6

8    was a flagpole?

9    A.    No.

10         MS. ALOI:  Nothing further.

11         MS. WAGNER:  Nothing further.

12         THE COURT:  Sir, thank you very much for your time.

13   You're excused.  Have a good trip home.

14         THE WITNESS:  You too.  Thank you.

15      (Witness steps down.)

16         MS. WAGNER:  And, Your Honor, at this time we're going

17   to call Ed Lavado to the stand.

18         EDWARD LAVADO, WITNESS FOR THE DEFENSE, SWORN

19                    DIRECT EXAMINATION

20   BY MS. WAGNER:

21   Q.    Could you please state your name to introduce yourself to

22   the jury and spell it.

23   A.    My name's Edward Lavado.  It's E-D-W-A-R-D, last name

24   L-A-V-A-D-O.

25   Q.    Mr. Lavado, where do you live?

1    A.    I live in Forest, Virginia.

2    Q.    Do you know Mr. Robertson?

3    A.    I do.

4    Q.    How do you know T.J.?

5    A.    Approximately 2009 I went to the police academy.  He was

6    one of the teachers there.  That's when I first met him.

7    Q.    What is your relationship like with T.J.?

8    A.    After that I end up working with him approximately 2011

9    and on, and we became friends, and he was also a fellow police

10   officer with me.

11   Q.    And you say you became friends.  How often do you see

12   T.J.?  Monthly?  Yearly?

13   A.    Maybe every other month.  Sometimes more, sometimes less.

14   Q.    And have you known T.J. to be using a walking stick?

15   A.    Yes.  Absolutely.  When he originally came back from

16   overseas he had been blown up and he had a piece of shrapnel

17   in his right leg, I believe it was.  And I can remember

18   because he couldn't get cleared for duty and it was taking

19   time to heal.  So he actually had a cane originally.  I don't

20   remember if it was metal or anything like that, but it was an

21   actual cane.

22         To do with a walking stick, I remember -- haven't seen it

23   a bunch of times, but like at the trainings that we'd have at

24   our own police department and at the police academy, he would

25   have a stick sometimes that he would lean on.  And I think --

1    I can't remember when it was but more recently, I went to get

2    something out of his truck and he had a stick in there, and it

3    was next to like a backpack, and I was like, "oh, what is

4    that, your old man stick?"  And I remember that because of

5    that.

6    Q.   Do you know why he uses a walking stick?

7    A.   Because of that injury in his leg.  I mean, it's a big

8    injury.

9         MS. WAGNER:   Thank you.  Nothing further.

10                    CROSS-EXAMINATION

11   BY MS. ALOI:

12   Q.   Good afternoon, Mr. Lavado.

13   A.   Good afternoon.

14   Q.   What year did you say you had met the defendant?

15   A.   I think it was the end of 2009, beginning of 2010.

16   Q.   Was that after he had returned from --

17   A.   No, that was before.

18   Q.   When did he return from overseas?

19   A.   I believe that was -- I'm not an expert, but I think it

20   was 2011, maybe '12.

21   Q.   So over 10 years ago?

22   A.   Just about 10 years ago.  Yes, ma'am.

23   Q.   And I think you just mentioned that you went to the

24   police academy at some point?

25   A.   Yes, ma'am.

1    Q.    Were you trained in how to use batons?

2    A.    Batons, an ASP, which is kind of like a baton, yes.

3    Q.    Is an ASP an extendable baton?

4    A.    Expandable, yes.

5    Q.    In the police academy did you learn about the importance

6    of being truthful with law enforcement?

7    A.    Yes, ma'am.

8    Q.    Would it surprise you to learn that the defendant told --

9          MS. WAGNER:  Objection.

10         (Bench conference.)

11         THE COURT:  Where's this going, Ms. Aloi?

12         MS. ALOI:  Well, he'd just testified he was at the

13   police academy with T.J., and I was going to ask about the

14   statement that T.J. had made to law enforcement.  And at the

15   police academy he would learn about the importance of

16   conversations, the significance of conversations with law

17   enforcement.  However, I'm happy to strike that question.

18         THE COURT:  I'm sorry.  I didn't pick that last part

19   up.  Repeat that.

20         MS. ALOI:  So the witness had just testified that he

21   knew T.J. from the police academy, and I am going to -- was

22   about to ask him the same question that had been posed to the

23   prior witness about whether or not he understood that the

24   defendant told law enforcement something about the stick.  And

25   I think that it's significant that he has been to the police

1    academy because then he understands that people are truthful

2    in speaking with law enforcement.

3              THE COURT:  This is the same flagpole question?

4              MS. ALOI:  Exactly.

5              THE COURT:  Any problem, Ms. Wagner?

6              MS. WAGNER:  Your Honor, the only thing he said when I

7    asked how do you know him is that they met at the police

8    academy, nothing else.  This is going beyond the scope of the

9    direct examination.

10             THE COURT:  As long as it's about the stick and the

11   flagpole or whether he used it as a flagpole or a stick,

12   that's fine.

13             MS. ALOI:  That was the question I was about to ask.

14             THE COURT:  That's fine.

15          (End of bench conference.)

16   BY MS. ALOI:

17   Q.   Mr. Lavado, just a few questions.  Would you be surprised

18   to learn -- are you aware that the defendant's house was

19   searched on January 19?

20   A.   I heard it was searched.  I don't know when.

21   Q.   Would you be surprised to learn that the defendant told

22   law enforcement that the wooden stick he carried on January 6

23   was a flagpole?

24   A.   I mean, if he was trying to make it into a flagpole, I

25   guess I wouldn't be surprised.  I mean, if he was -- it's kind

1    of a hard question.  But if I had a walking stick and I wanted
2    to attach a flag to it during a speech, I guess, I wouldn't be
3    surprised.
4    Q.   Mr. Lavado, were you at the Capitol on January 6?
5    A.   No, ma'am.
6    Q.   Were you present for the trial here today?
7    A.   No.
8    Q.   Have you heard any of the evidence in this case?
9    A.   No.
10   Q.   So you don't actually know what the defendant did on
11   January 6, did you?
12   A.   No, ma'am, no.
13   Q.   And you don't actually know anything about what he
14   actually carried on January 6.
15   A.   No, ma'am.
16        MS. ALOI:  Thank you.
17        THE COURT:  Ms. Wagner.
18        MS. WAGNER:  No more questions.
19        THE COURT:  Okay.  Sir, you're excused.  Thank you for
20   your testimony.  Have a good trip back home.
21        THE WITNESS:  Thank you, Your Honor.
22      (Witness steps down.)
23        MS. WAGNER:  And, Your Honor, at this time the defense
24   rests.
25        THE COURT:  Okay.

1          MS. BERKOWER:  Your Honor, the government has a very

2     brief rebuttal case, and we would call Special Agent Kate

3     Camiliere.

4          KATHRYN CAMILIERE, WITNESS FOR THE GOVERNMENT, SWORN

5                        DIRECT EXAMINATION

6     BY MS. BERKOWER:

7     Q.    Good afternoon again, Special Agent.

8     A.    Good afternoon.

9          MS. BERKOWER:  Your Honor, may I pass a document up

10    through the clerk?  This is the exhibit we're going to be

11    using in this exam.  We are marking it Government Exhibit

12    3000.

13          THE COURT:  You may.

14       (Document tendered to the Court.)

15    BY MS. BERKOWER:

16    Q.    Special Agent Camiliere, in the course of this

17    investigation, did you examine a -- cell phones owned by the

18    defendant?

19    A.    Yes.

20    Q.    And to do that did you use a software called Cellebrite?

21    A.    Yes.

22    Q.    From that, were you able to examine communications that

23    the defendant had with other people through text?

24    A.    Yes, I was.

25    Q.    In the course of your examination of his cell phone, did

1    you find communications with someone named Ed Buckley?

2    A.   Yes, I did.

3    Q.   Do you know Ed Buckley to be an acquaintance of the

4    defendant?

5    A.   Yes, I do.

6    Q.   Is he also a retired FBI agent?

7    A.   Yes.

8    Q.   And did you find communications between the defendant and

9    Ed Buckley after January 6 of last year?

10   A.   I did.

11   Q.   Now, I put on the screen in front of you a document.  Do

12   you recognize this to be a Cellebrite report from one of the

13   defendant's cell phones?

14   A.   Yes, I do.

15   Q.   And let's be clear.  Was this a cell phone activated

16   after January 6?

17   A.   Yes.

18   Q.   After January 14 even?

19   A.   Yes.

20   Q.   So it was an entirely different cell phone than what

21   you've testified about before?

22   A.   That's correct.

23   Q.   Now, in this Cellebrite report, did you find a

24   communication between the defendant and Ed Buckley concerning

25   his physical fitness?

1   A.   I did.

2   Q.   And is that what we're looking at here?

3   A.   It is.

4        MS. BERKOWER:  Your Honor, I'd ask for admission of

5   Government's Exhibit 3000.

6        MS. WAGNER:  No objection.

7        THE COURT:  So moved.  3000 is admitted.

8                              (Government Exhibit No. 3000

9                               received into evidence.)

10       MS. BERKOWER:  And if we may publish it, please.

11       THE COURT:  You may.

12  BY MS. BERKOWER:

13  Q.   Now, Special Agent Camiliere, can you tell us the date of

14  the communication here?

15  A.   Yes.  It's April 5, 2021.

16  Q.   And this is a green box.  Is that right?

17  A.   Yes.

18  Q.   What does that signify?

19  A.   It means the defendant sent the message.

20  Q.   Who did he send it to?

21  A.   Ed Buckley.

22  Q.   Can you read the content of the message?

23  A.   "I'm 48.  My kids are adult and I can still run a 16

24  minute 2 mile with a 30 pound pack.  I'm as dangerous as I'll

25  ever be."

1    Q.   And the date of that was what?

2    A.   April 5, 2021.

3    Q.   Was that after January 6 of 2021?

4    A.   Yes.

5    Q.   Approximately -- less than three months after?

6    A.   Yes.

7    Q.   Now, Special Agent Camiliere, are you familiar -- does

8    the idea of running a 16-minute two-mile with a 30-pound pack,

9    are you familiar with that type of run?

10   A.   Yes, I am.  When I was in the Army I attended Air Assault

11   School.  The Air Assault School standard is running a

12   15-minute mile, running or walking a 15-minute mile with a

13   35-pound pack.

14   Q.   Just one mile?

15   A.   Just one mile.

16   Q.   So based on your knowledge of that type of run, does this

17   signify to you that the defendant is physically fit?

18   A.   Yes.

19   Q.   And capable of serious physical exertion in a very short

20   period of time?

21   A.   Yes.

22   Q.   Under stressful conditions?

23   A.   Yes.

24        MS. BERKOWER:  No further questions.

25

1                       CROSS-EXAMINATION

2    BY MR. ROLLINS:

3    Q.    Good afternoon again.

4    A.    Good afternoon.

5    Q.    This statement doesn't -- shows that he in fact -- tells

6    this other person that he can actually do this.  Right?

7    A.    Yes.

8    Q.    It doesn't actually say what his body will be like after

9    he does that.  Correct?

10   A.    That's correct.

11   Q.    And that mere fact that one can do that doesn't mean that

12   what will happen after they do that in terms of whether

13   they'll need to use a cane or a walking stick after that.

14   Right?

15   A.    I couldn't say one way or the other.

16         MR. ROLLINS:  No further questions.

17         MS. BERKOWER:  Nothing further from the government.

18   And the government rests its rebuttal case.

19         THE COURT:  Ladies and gentlemen, so the defense has

20   rested its case, the government has now rested its entire

21   case, and so the presentation of evidence in the case is now

22   complete.  The next step will be the jury instruction process.

23   I've conferred with the lawyers, and we will probably need

24   about 45 minutes or an hour to iron out the final instructions

25   that we are going to give to you that will guide your

1       deliberations.  So we will excuse you until 3:15.  Okay?

2          So feel free to leave the building if you like, stay in the

3       courtroom if you like, just no discussions about the case, no

4       research about the case.  And just for planning purposes, what

5       we -- the schedule will be that when you come back we will

6       instruct you on the law and then adjourn for the evening, and

7       we plan to start closing arguments tomorrow morning.

8          All right?  So unless there's some changes, that will

9       likely be our schedule going forward.  All right?  So thank

10      you for your patience, and we'll see you back in an hour.

11          (Jury out at 2:19 p.m.)

12          THE COURT:  Okay.  Agent Camiliere, you can step down.

13          (Witness steps down.)

14          Counsel, we'd need about five or 10 more minutes just to

15      finalize the proposed instructions.  We'll send out copies to

16      each side, give you an opportunity to read through them, and

17      then I'll come back, we'll do our charge conference, I'll

18      explain how I've resolved some of the disagreements between

19      the two sides, and we can discuss it.  Also look for typos and

20      things like that.

21          And then I'll give you an opportunity to lodge objections

22      for the record, we'll make the changes if any, and then come

23      back and instruct.  Okay?  Ms. Wagner.

24          MS. WAGNER:  Your Honor, just for the record, we would

25      renew our motion at this time.

1          THE COURT:  Very well.  It's under advisement.

2          MS. WAGNER:  Thank you.

3        (Recess from 2:21 p.m. to 2:54 p.m.)

4          THE COURT:  All right.  Have you all had enough time to

5    read through those, or do you need a few more minutes?

6          MS. ALOI:  The government is ready to proceed.

7          MR. ROLLINS:  We're ready.

8          THE COURT:  Okay.  And congratulations, by the way.

9    Well tried on both sides.

10       All right.  I'll just sort of go through them.  Instruction

11   4 was not in the proposed instruction.  Instruction No. 5 was

12   not in the proposed instruction.  Note taking.  I think we

13   should include both those if there's no objection.

14         MS. ALOI:  No objection from the government.

15         THE COURT:  Okay.  We'll include 15, right of the

16   defendant not to testify, but not defendant as a witness.

17       Instruction 17 on identification.  The identification is

18   not really in dispute here.  Do we need an identification

19   instruction?

20         MR. ROLLINS:  The defense does not.

21         MS. ALOI:  The government does not.

22         THE COURT:  All right.  We'll remove 17.

23       No. 19, inadmissible and stricken evidence.  I don't

24   believe I struck any exhibits, so I would suggest not

25   including the last sentence.  Is that okay with everybody?

1              (Parties indicate agreement.)

2          No. 20, transcripts of tape recordings.  I know we had the

3      transcript of the radio runs.  I don't think there's any

4      dispute over the accuracy of those transcripts.

5              MR. ROLLINS:  No.

6              THE COURT:  Do we need 20, Mr. Rollins?

7              MR. ROLLINS:  No.

8              THE COURT:  Government agrees?

9              MS. ALOI:  Yes.

10             THE COURT:  All right.  We will remove 20.  And we'll

11     renumber everything.

12         Okay.  Moving to the substantive instructions.  We changed

13     the name of Count 1, or we changed how the instructions refer

14     to Count 1 and Count 6 to make them parallel since they're

15     alleged violations of the same statute.  And then sort of

16     elaborated that Count 1, it regards the certification, whereas

17     Count 6 regards the grand jury investigation and prosecution.

18     Do you want to be heard on that?

19             MS. ALOI:  Yes, Your Honor.

20             THE COURT:  Okay.

21             MS. ALOI:  The government's objection to the

22     reformulation of Count 6 is simply that it should say "with

23     respect to the grand jury investigation or the prosecution of

24     this case."  The grand jury investigation and the prosecution

25     are two different proceedings.

1          THE COURT:  Okay.  Mr. Rollins, any objection to that?

2          MR. ROLLINS:  Well, the government didn't put on any

3     evidence regarding the grand jury investigation.  There was no

4     mention of it.  And I guess when they describe the official

5     proceeding, I think they're trying to describe the official

6     proceeding that started on January 13?

7          Actually, we'll leave both of them in.  We can leave the

8     grand jury investigation in then.

9          THE COURT:  All right.  But otherwise no objection to

10    renaming the offenses?

11          MR. ROLLINS:  No.

12          THE COURT:  Okay.

13          Okay.  And moving to 21, Count 1, we essentially adopted

14    the government's instruction.  We did not include the

15    defense's proposed fifth element from the *Miller* case

16    regarding taking action with respect to a document or record.

17    We also did not include the defendant's addition of

18    "dishonestly" in the proposed definition of "corruptly,"

19    consistent with Judge Friedrich's ruling on that issue in

20    *Reffitt*.

21          So with that, Mr. Rollins, would you like to lodge an

22    objection or be heard on the Court's changes?

23          MR. ROLLINS:  We would lodge an objection, but we'll

24    submit on the papers that we submitted.

25          THE COURT:  Very well.  Your objection's noted.

1          Okay.  On Count 2, civil disorder and aiding and abetting,

2     we added several definitions from -- we added a definition

3     from the statute for civil disorder, as well as material from

4     the stipulations that have been agreed to that relate to that

5     particular charge.  But my practice is to include agreed terms

6     or agreed elements from stipulations in the instructions just

7     so it's clear to the jury that they don't have to labor over a

8     particular element or particular definition if the parties

9     have already agreed.  Any objections?

10          MS. ALOI:  No objection.

11          THE COURT:  Mr. Rollins?

12          MR. ROLLINS:  No objection.

13          THE COURT:  All right.  With respect to Count 3, couple

14     things.  First, we noticed that the jury form on that count

15     includes a lesser-included offense that does not involve the

16     dangerous or deadly weapon.  And we thought it would make

17     sense to explain that in the instruction.  And I don't think

18     the proposed instructions did that.  So we included the red

19     book sort of lesser-included charge and basically telegraph to

20     the jury how they should approach the lesser-included when

21     they get to that part of the jury form.

22          And then with respect to the definition of a deadly or

23     dangerous weapon, we essentially lifted the instruction from

24     the *Arrington* case from the D.C. Circuit.  Any objections?

25          MS. ALOI:  Your Honor, we would ask that the language

1    on the restricted area from the stipulation that was not read

2    into evidence but which is going back to the jury be included

3    for Count 3 and then incorporated into Count 4.

4              THE COURT:  Any objection, Mr. Rollins?

5              MR. ROLLINS:  No.

6              THE COURT:  So the restricted area definition from the

7    stip included in Count 3 and 4.  Is that right?

8              MS. ALOI:  Yes, Your Honor.

9              MS. BERKOWER:  Your Honor, one thing I noticed about

10   the definition you used from the *Arrington* case, the last line

11   of that section of the instruction at the end, the definition

12   section, says an --

13             THE COURT:  Hold on.  Let me get to it.  Which page?

14             MS. BERKOWER:  Page 23.  So I note that the defendant

15   is charged with using or carrying, and I think the last -- the

16   instruction in the first sentence only references using.  And

17   so I think we would ask for "used or carried."  And then

18   later --

19             THE COURT:  Okay.  I'm sorry.  I lost you here.

20             MS. BERKOWER:  Sorry.  The first full paragraph on page

21   23 says "the last element the government must prove beyond a

22   reasonable doubt is that the defendant used a deadly or

23   dangerous weapon" --

24             THE COURT:  Used or carried.

25             MS. BERKOWER:  Yes.  Right.

1          THE COURT:  Okay.

2          MS. BERKOWER:  And then I think -- and actually --

3     well, and then later on in that paragraph, in the second to

4     last sentence, it does say used or carried, but then in the

5     last sentence, the very last phrase of that again references

6     just use.

7          THE COURT:  Yeah.  So this -- the way I read the

8     definitions in the instruction is that they distinguish

9     between an inherently dangerous weapon versus a object that is

10    not inherently dangerous but can be used as a dangerous

11    weapon.  So, you know --

12         MS. BERKOWER:  Yes, Your Honor.

13         THE COURT:  I have another January 6 case involving a

14    lacrosse stick, right?  And I think in order for a lacrosse

15    stick to be a dangerous weapon -- it's not inherently

16    dangerous -- it has to be more than simply carried in a

17    certain manner; it's got to be used in a dangerous manner.

18    And I think that's consistent with *Arrington* which involved a

19    car.

20         MS. BERKOWER:  Well, I would say, Your Honor -- and I

21    would ask for the Court's brief indulgence --

22         THE COURT:  Because your theory is not that he was

23    simply carrying the stick.  Your theory is that he used it in

24    some way.  Correct?

25         MS. BERKOWER:  I think our theory is potentially that

1    he used it in a certain way, but also that he carried it with

2    certain intentions, given his training and what he was

3    intending to do that day, that he brought it with him because

4    it was something that he could use and knew how to use as a

5    dangerous weapon.

6         THE COURT:  Right.  But I think that what *Arrington*

7    tells me is that he has to use it in some way.  Now, you can

8    argue that the use was, you know, brandishing or displaying it

9    in some way, but he's got to use it.  He can't just carry it.

10        MS. BERKOWER:  Your Honor, may I have one brief moment?

11        THE COURT:  Yes.

12    (Government conferring.)

13        MS. BERKOWER:  Your Honor, one of my colleagues

14   reminded me that there is one distinction between *Arrington*

15   and the case before the Court, which is that *Arrington* is a

16   111 case involving an assault, and that one of the elements of

17   that offense is in fact use, whereas one of the elements of

18   1752 is use or carrying.  And so to the extent the Court was

19   addressing this in the context of use, that's because that is

20   required by the statute that was before the Court at that time

21   as an element of that offense.

22        THE COURT:  Understood.  But how can one simply carry

23   an object that is not inherently dangerous in a manner that

24   would cause serious bodily injury or death?

25        MS. BERKOWER:  I think then we would have to prove that

1    that was his intention, was that he -- for instance, if he had

2    not gotten to the point where he could actually use it, but

3    had brought it for a specific purpose as a dangerous item,

4    that he knew could cause damage, but never actually was able

5    to get to the point where he could use it, I think we would

6    still be able to prove the offense given his intentions.

7         And to be clear, this is not just -- this doesn't make --

8    this definition wouldn't make -- wouldn't make the carriage of

9    that item completely untethered to the offense.  We still do

10   have to prove the nexus of carrying it during and in relation

11   to the offense.

12        So I think if we were proceeding under this theory, it

13   would be that this is an item that he knew would not

14   necessarily be viewed as a prohibited item, given where he was

15   going, but he's trained up on it in a way such that in his

16   hands it is potentially a very dangerous item that he could

17   use for all number of reasons.  And given his intentions to

18   overturn the election that day, putting two and two together

19   when he approaches the Capitol and goes into the building with

20   this item that's in his hands, he's uniquely trained to use in

21   a certain way, and given some of the other evidence showing

22   his intentions by his interactions with the officers, we think

23   we could prove he was carrying a dangerous item during and in

24   relation to this particular offense.

25             THE COURT:  Mr. Rollins or Ms. Wagner?

1          MS. WAGNER:  Your Honor, the defense did provide our

2     version of what we wanted the definition to be, and there are

3     several cases cited there as well that are along the same line

4     as the case that Your Honor just gave us to read.  And they

5     don't necessarily have to do with the same charge, which was

6     just pointed out by the prosecution's colleague.

7       We agree with the Court that you cannot just find an

8     individual guilty for having something that is not inherently

9     a dangerous weapon and just carrying it, making it a carrying

10    or using a dangerous weapon.  It just does not make sense.

11      Now, if Your Honor would like to include a "and/or" where

12    it's he used it in a dangerous manner or his intent was to use

13    it in a dangerous manner in the way he was carrying it, that

14    would probably confuse the jury, but that would be I guess one

15    way to handle this.

16      But you can't just -- him holding a stick, carrying it in a

17    certain manner, it doesn't make sense.  Your Honor was on

18    point.

19          MS. BERKOWER:  Your Honor, may I be heard briefly

20    again?

21          THE COURT:  You may.

22          MS. BERKOWER:  I'm sorry.

23          THE COURT:  No, now I'm really confused.

24          MS. BERKOWER:  I hope I don't make it worse.

25       Your Honor, the indictment actually doesn't charge use

1    here.  It only charges Mr. Robertson with carrying a deadly or

2    dangerous weapon in connection with the offense.  And I think

3    the concern we have is given that he's not charged with using

4    it, he's charged with carrying it, defining the dangerous

5    weapon to require use sort of ends the inquiry.

6         THE COURT:  And you get around *Arrington* because

7    *Arrington* involved an assault, and so use was assumed.

8         MS. BERKOWER:  It's a required element of the crime,

9    yes.

10         THE COURT:  Well, I guess the question is *Arrington* is

11    defining dangerous weapon, and even though the offense is

12    different, why isn't the definition of the dangerous weapon

13    the same here as it is in *Arrington*?

14         MS. BERKOWER:  I think that the question of carrying a

15    dangerous weapon was not before the Court there, and if we

16    were to incorporate the definition that requires use, that

17    would render, like, inoperable any language that you could

18    convict based on carriage and not use.  It would make it --

19         THE COURT:  So your suggestion, in combination with

20    Ms. Wagner's acknowledgement that his intent plays a role even

21    if he did not use it, what would the language be?

22         MS. BERKOWER:  Sorry.  I left the...

23         THE COURT:  And the defendant uses or intends to use --

24    or intends that it be used in that manner?

25         MS. BERKOWER:  I'm sorry, Your Honor.  Could you --

1          THE COURT:  So if we take the last sentence of the

2     instruction:  "An object is a deadly or dangerous weapon if

3     the object is capable of causing serious injury or death to

4     another person and the defendant uses or intends that it be

5     used in that manner"?

6          MS. BERKOWER:  Yeah.  Yes.  I think Ms. Aloi just came

7     up with a suggestion that may fix the issue.  If we end the

8     sentence so it just reads:  "An object is a deadly or

9     dangerous weapon if the object is capable of causing serious

10    bodily injury or death to another person," and end the

11    sentence there.

12       We still have to prove that it was carried during and in

13    relation to the offense.  That's another element of the

14    statute, and therefore we have to prove his intentions by

15    saying it was -- the proof of during and in relation to the

16    offense means we have to prove that he was intending to use it

17    that way.

18       But I think including the last phrase that we currently

19    have in there and adding in some sort of intent for carriage

20    sort of confuses the issue more than we need to.  For purposes

21    of defining the dangerous weapon itself, if we just cut off

22    the sentence a little bit earlier, that may fix things.

23          THE COURT:  Ms. Wagner?

24          MS. WAGNER:  Your Honor, the government's proposal is

25    basically making this a strict liability claim.  Just because

he has a weapon that could potentially be used as a dangerous

weapon and he's carrying it, he's going to have this

enhancement?  That makes absolutely no sense.

What we would suggest is, since the government just pointed

it out, it's only carried and not use, all of the usage comes

out because they themselves are saying that the indictment was

he carried a dangerous or deadly weapon.

So we would now propose that all of the "use" words are

out, and that the last sentence ends by saying "an object is a

deadly or dangerous weapon if the object is capable of causing

serious bodily injury or death to another person, and the

intent of the defendant when carrying said object was to use

it in such manner," or something of the sort.

THE COURT:  All right.  We will take that under

advisement.  One final word.

MS. BERKOWER:  Final point, Your Honor.  In light of

what Ms. Wagner just said, if --

THE COURT:  Is there a less wordy way of saying that?

MS. BERKOWER:  I hope I'm about to propose one.

THE COURT:  Okay.

MS. BERKOWER:  That the end of the last sentence, the

last line would say "and the defendant intends to use it in

that manner."  We would agree that that would be an

appropriate solution as well.

THE COURT:  Ms. Wagner, are you okay with that slight

1    change?

2           MS. WAGNER:  I mean, I guess it's fine, but it does not

3    go to the other point the government made that it's only --

4           THE COURT:  Ms. Berkower, taking out the references to

5    use and just say carry, since the government's indicted on

6    carry and not use.

7           MS. BERKOWER:  That's fine.

8           MS. WAGNER:  That's fine.

9           THE COURT:  Okay.  Very well.  Thank you.

10      We think that's fine.  I will confer with my lawyers and

11   get back to you.

12      All right.  Count 4.  We essentially adopted the

13   government's formulation and agree that the defendant's

14   additional language from the statute is duplicative,

15   unnecessary, and potentially confusing to the jury.

16      Same with Count 5.  We added the definition of the term

17   "disorderly and disruptive conduct" from the red book, as we

18   did in Count 4.

19      Again, Count 6, we renamed it Obstruction of an Official

20   Proceeding.

21      And the concluding instructions I paraphrase after

22   closings.

23      Any other objections or typos or --

24           MS. ALOI:  Nothing from the government.

25           THE COURT:  -- any other problems?  Nothing from the

1    government?

2            MS. ALOI:  No, Your Honor.

3            MS. WAGNER:  Just a quick question, Your Honor.  You

4    had said earlier that you would instruct on the lesser

5    included.  Unless I'm missing them, I didn't see what you

6    would be saying regarding the lesser included.

7        I take that back, Your Honor.  I do see it on page 21.

8            THE COURT:  Yeah.

9            MS. WAGNER:  And on page 25.  Okay.  Nothing further,

10   Your Honor.  Thank you.

11           THE COURT:  Okay.  All right.  We'll make these changes

12   and bring the jury back and instruct and send them home for

13   today.  All right.

14       Now, we should use this time this afternoon to gather up

15   all the exhibits.  I know many of the exhibits are the videos.

16   Do we have a clean laptop that we're going to send back to the

17   jury, Ms. Jenkins, just loaded with the admitted electronic

18   evidence?

19           THE DEPUTY CLERK:  We're working on it now, Your Honor.

20           THE COURT:  We're working on it?  Okay.

21       All right.  Anything else?  All right.

22       (Recess from 3:19 p.m. to 3:55 p.m.)

23           THE COURT:  All right.  We're back on the record.  The

24   printer jams just at the wrong time.  Sorry that took a little

25   longer.  Just follow along as I read, and if there are typos

1    or mistakes we can correct them in the final version that will

2    go to the jury tomorrow morning.

3        Counsel, on page 21, is it necessary for me to read them

4    the entire stipulation regarding Capitol building grounds and

5    restricted area, or can I just say that the parties have

6    stipulated certain facts with regard to Capitol building and

7    restricted area and then refer them to the stipulation?  Is

8    that okay?

9            MS. ALOI:  That's okay.

10            MR. ROLLINS:  No objection.

11        (Jury in at 4:01 p.m.)

12            THE COURT:  Welcome back, ladies and gentlemen.  My

13    apologies that that took a little bit longer than we expected

14    it to, but I think we are ready to go with the final jury

15    instructions in the case.  And I am required to read these to

16    you.  So bear with me.  It may take a bit.

17                        JURY INSTRUCTIONS

18    You have now heard all of the evidence in the case.  Before you

19    begin your deliberations, I am going to instruct you on the law.

20    I will start with some general rules of law and then talk about

21    the specific charges alleged here and some of the specific

22    issues in this case.  Some of these rules will repeat what I

23    told you in my preliminary instructions.

24        I will provide each of you with a copy of these instructions.

25    During your deliberations, you may, if you wish, refer to these

1   instructions.  While you may refer to any particular portion of

2   the instructions, you are to consider the instructions as a

3   whole, and you may not follow some and ignore others.  If you

4   have any questions about the instructions, you should feel free

5   to send me a note.  Please leave your instructions in the jury

6   room when you conclude your deliberations.

7       As I said at the outset of the case, my function is to

8   conduct this trial in an orderly, fair, and efficient manner,

9   to rule on questions of law and to instruct you on the law that

10  applies in this case.  It is your duty to accept the law as I

11  instruct you.  You should consider all of the instructions as

12  a whole, and again, you may not ignore or refuse to follow any

13  of them.

14      Your function as the jury is to determine what the facts

15  are in this case.  You are the sole judges of the facts.  While

16  it is my responsibility to decide what is admitted as evidence

17  during the trial, you alone decide what weight, if any, to give

18  to that evidence.  You alone decide the credibility or the

19  believability of the witnesses.

20      You should determine the facts without prejudice, fear,

21  sympathy, or favoritism.  You should not be improperly

22  influenced by anyone's race, ethnic origin or gender.  Decide

23  the case solely from a fair consideration of the evidence.

24      You may not take anything I may have said or done during the

25  trial as indicating how I think you should decide this case.

1    If you believe that I have expressed or indicated any such

2    opinion, you should ignore it.  The verdict in this case is

3    your responsibility alone.

4        If any reference by me or the attorneys to the evidence is

5    different from your own memory of the evidence, it is your

6    memory that should control during your deliberations.

7        During the trial, I have permitted those jurors who wished to

8    do so to take notes.  You may take your notebooks with you to

9    the jury room and use them during your deliberations if you'd

10   like.  As I said at the beginning of the trial, your notes are

11   only to be an aid to your memory.  They are not evidence in the

12   case, and they should not replace your own memory of the

13   evidence.  Those jurors who have not taken notes should rely

14   on their own memory.  The notes are intended to be for the

15   note-taker's own personal use.

16       During your deliberations you may consider only the evidence

17   properly admitted in this trial.  The evidence consists of the

18   sworn testimony of the witnesses, the exhibits that were

19   admitted into evidence, and the facts and testimony stipulated

20   to by the parties.

21       During the trial you were told that the parties had

22   stipulated, or agreed, to certain facts.  You should consider

23   any stipulation of fact to be undisputed evidence.

24       When you consider the evidence, you are permitted to draw

25   from the facts that you find have been proven any reasonable

1    inferences that you feel are justified in light of your
2    experience.  You should give any evidence the weight that you
3    think it is fairly entitled to receive.

4      The statement and arguments of the lawyers are not evidence.
5    They are only intended to assist you in understanding the
6    evidence.  The questions of the lawyers are likewise not
7    evidence.

8      As I've explained, the defendant was charged in this case
9    via an indictment.  An indictment is merely the formal way
10   of accusing a person of a crime.  You must not consider the
11   indictment as evidence of any kind.  You may not consider it
12   as evidence of Mr. Robertson's guilt or draw any inference of
13   guilt from it.

14     Every defendant in a criminal case is presumed to be
15   innocent.  This presumption of innocence remains with the
16   defendant throughout the trial unless and until the government
17   has proven he is guilty beyond a reasonable doubt.  This burden
18   never shifts throughout the trial.  The law does not require
19   Mr. Robertson to prove his innocence or to produce any evidence
20   at all.

21     If you find that the government has proven beyond a
22   reasonable doubt every element of an offense with which
23   Mr. Robertson is charged, it is your duty to find him guilty of
24   that charge.  On the other hand, if you find the government has
25   failed to prove any element of an offense beyond a reasonable

doubt, you must find Mr. Robertson not guilty of that charge.

The government has the burden of proving Mr. Robertson guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases where it is only necessary to prove that a fact is more likely true than not, or in some instances that its truth is highly probable. In criminal cases like this one, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you have a reason based on evidence or lack of evidence in the case. If after careful, honest, and impartial consideration of all of the evidence you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt. Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life.

However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork. It is a doubt based on reason.

The government is not required to prove guilt beyond all doubt or to a mathematical or scientific certainty. The burden is to prove guilt beyond a reasonable doubt.

There are two types of evidence from which you may determine what the facts are in this case: direct evidence and circumstantial evidence. When a witness such as an eyewitness

1    asserts actual knowledge of a fact, the witness's testimony is

2    direct evidence.  On the other hand, evidence of facts and

3    circumstances from which reasonable inferences may be drawn is

4    circumstantial evidence.  Let me give you an example.

5    Assume a person looked out a window and saw that snow was

6    falling.  If he or she later testified in court about what they

7    had seen, that testimony would be direct evidence that snow was

8    falling at the time the witness saw it happen.  But now assume

9    that the witness looked out a window and saw no snow on the

10   ground and then went to sleep and saw snow on the ground the

11   following morning.  His testimony about what he had seen would

12   be circumstantial evidence that it had snowed while he was

13   asleep.

14   The law says that both direct and circumstantial evidence are

15   acceptable means of proving a fact.  The law does not favor one

16   form of evidence over the other.  It is for you to decide how

17   much weight to give any particular evidence, whether direct or

18   circumstantial.  You are permitted to give equal weight to both.

19   Circumstantial evidence does not require a greater degree of

20   certainty.  In reaching a verdict in this case, you should

21   consider all of the evidence presented, both direct and

22   circumstantial.

23   One of the questions you were asked when we were selecting

24   this jury was whether the nature of the charges themselves would

25   affect your ability to reach a fair and impartial verdict.  I

asked you that question because you must not allow the nature of the charge to affect your verdict.  You must consider only the evidence that has been presented in reaching a fair and impartial verdict.

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side.  Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe.  You may find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other, or you might find the opposite.

In determining whether the government has proved the charges against the defendant beyond a reasonable doubt, you must consider the testimony of all the witnesses who have testified. You are the sole judges of the credibility of the witnesses. You alone determine whether to believe any witness and the extent to which a witness should be believed.

Judging a witness's credibility means evaluating whether the witness has testified truthfully, and also whether the witness accurately observed, recalled or described the matters about which he or she testified.  You may consider anything that in your judgment affects the credibility of any witnesses.  For example, you may consider the demeanor and behavior of the witness, the witness's manner of testifying, whether the witness impresses you as a truthful person, whether the witness

impresses you as having an accurate memory and recollection, whether the witness has any motive for not telling the truth, whether the witness has had a full opportunity to observe the matters about which he or she has testified, whether the witness has any interest in the outcome of the case or friendship or hostility towards other people involved in the case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including any that would impair or improve the witness's ability to remember the event, the time that has elapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall details of the event.

Inconsistencies or disparities in the testimony of a witness or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more people witnessing an incident or transaction may see it or hear it differently.  An innocent misrecollection, like a failure of recollection, is not an uncommon experience.

In weighing the effects of the inconsistency or discrepancy, always consider whether it pertains to a matter of important or unimportant detail, and whether the inconsistency or discrepancy results from innocent error or intentional falsehood.

You may consider the reasonableness or unreasonableness, the probability or improbability of the testimony of a witness in determining whether to accept it as true and accurate.  You may

consider whether the witness has been contradicted or supported by other evidence that you credit.

If you believe that any witness has shown himself to be biased or prejudiced for or against either side, you may consider and determine whether that bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of the witness to tell the truth. You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

Every defendant in a criminal case has an absolute right not to testify. Mr. Robertson has chosen to exercise that right. You must not hold this decision against him, and it would be improper for you to speculate as to the reason or reasons for his decision. You may not draw any inference of guilt from the defendant's decision not to testify.

You've heard testimony from officers of the United States Capitol Police, the Metropolitan Police Department, the Federal Bureau of Investigation, and the United States Secret Service. A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any other witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because he or she is a law enforcement officer.

1     You've heard evidence that Jacob Fracker entered into a plea

2     agreement with the government pursuant to which he agreed to

3     testify truthfully in this case, and the government agreed to

4     dismiss certain charges against him, decline prosecution of

5     charges against him, and to bring Mr. Fracker's cooperation to

6     the attention of the sentencing judge.

7     The government is permitted to enter into this type of plea

8     agreement.  You in turn may accept the testimony of such a

9     witness and convict the defendant on the basis of his testimony

10    alone if it convinces you of the defendant's guilt beyond a

11    reasonable doubt.  A witness who has entered into a plea

12    agreement is under the same obligation to tell the truth as is

13    any other witness.  The plea agreement does not protect him

14    against a prosecution for perjury or false statement should he

15    lie under oath.

16    However, you may consider whether a witness who has entered

17    into such an agreement has an interest different from other

18    types of witnesses.  You may consider whether the plea agreement

19    the witness entered into with the government has motivated him

20    to testify falsely against the defendant.  The testimony of a

21    witness who has entered into a plea agreement should be

22    considered with caution.  You should give the testimony as much

23    weight as in your judgment it deserves.

24    The lawyers in the case sometimes objected when the other

25    side asked a question, made an argument, or offered evidence

that the objecting lawyer believed was not proper.  You must not
hold such objections against the lawyer who made them or the
party that he or she represents.  It is the lawyer's
responsibility to object to evidence that they believe is not
admissible.

If during the course of the trial I sustained an objection to
a lawyer's question, you should ignore the question, and you
should not speculate as to what the answer would have been.  If
after the witness answered the question I ruled that the answer
should be stricken, you should ignore both the question and the
answer and they should play no part in your deliberations.

Okay.  I will now instruct you on the specific offenses
charged in the indictment.  The indictment in this case contains
six counts.  First, Obstruction of an Official Proceeding and
aiding and abetting with respect to Congress's certification of
the electoral vote -- the electoral college vote.

2, civil disorder and aiding and abetting.

3, entering or remaining in a restricted building or grounds.

4, disorderly and disruptive conduct in a restricted building
or grounds.

5, disorderly conduct in a Capitol building.

And 6, obstruction of an official proceeding, this time with
respect to the grand jury investigation or the prosecution of
this case.

Okay.  Let's start with Count 1.  Count 1 of the indictment

charges the defendant with corruptly obstructing an official proceeding which is a violation of federal law.  Count 1 also charges the defendant with attempt to obstruct or impede an official proceeding, and aiding and abetting others to commit that offense.

I will first explain the elements of the substantive offense along with its associated definitions.  I will then explain how to determine whether the defendant attempted the offense and whether he aided and abetted the offense.

In order to find the defendant guilty of corruptly obstructing an official proceeding, you must find that the government proved each of the following four elements beyond a reasonable doubt:

First, that the defendant attempted or did obstruct or impede an official proceeding.  Second, the defendant acted with the intent to obstruct or impede the official proceeding.  Third, the defendant acted knowingly with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.  And fourth, that the defendant acted corruptly.

I'll now give you some definitions that apply to those elements.  The term "official proceeding" includes a proceeding before the Congress.  The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be

1    instituted, the government must prove beyond a reasonable doubt

2    that the official proceeding was reasonably foreseeable to the

3    defendant.

4        As used in Count 1, the term "official proceeding" means

5    Congress's joint session to certify the electoral college vote.

6        A person acts knowingly if he realizes what he is doing and

7    is aware of the nature of his conduct and does not act through

8    ignorance, mistake, or accident.  In deciding whether the

9    defendant acted knowingly, you may consider all of the evidence,

10   including what the defendant did or said.

11       To act corruptly the defendant must use unlawful means, or

12   act with an unlawful purpose, or both.  The defendant must also

13   act with consciousness of wrongdoing.  Consciousness of

14   wrongdoing means with an understanding or awareness that what

15   the person is doing is wrong.

16       Not all attempts to obstruct or impede an official proceeding

17   involve acting corruptly.  For example, a witness in a court

18   proceeding may refuse to testify by invoking his constitutional

19   privilege against self-incrimination, thereby obstructing or

20   impeding the proceeding.  But he does not act corruptly.

21       In contrast, an individual who obstructs or impedes a court

22   proceeding by bribing a witness to refuse to testify in that

23   proceeding or by engaging in other independently unlawful

24   conduct does act corruptly.

25       In Count 1 the defendant is also charged with attempt to

1    commit the offense of Obstruction of an Official Proceeding.  An

2    attempt to commit Obstruction of an Official Proceeding is a

3    crime even if the defendant did not actually complete the crime

4    of Obstruction of an Official Proceeding.

5        In order to find the defendant guilty of attempt to commit

6    Obstruction of an Official Proceeding, you must find that the

7    government proved beyond a reasonable doubt each of the

8    following two elements:

9        First, that the defendant intended to commit the crime of

10    Obstruction of an Official Proceeding as I have defined that

11    offense.  Second, that the defendant took a substantial step

12    toward committing Obstruction of an Official Proceeding which

13    strongly corroborates or confirms that the defendant intended to

14    commit that crime.

15        With respect to the first element of attempt, you may not

16    find the defendant guilty of attempt to commit Obstruction of an

17    Official Proceeding merely because he thought about it.  You

18    must find that the evidence proved beyond a reasonable doubt

19    that the defendant's mental state passed beyond the stage of

20    thinking about the crime to actually intending to commit it.

21        With respect to the substantial step element, you may not

22    find the defendant guilty of attempt to commit Obstruction of an

23    Official Proceeding merely because he made some plans or some

24    preparation for committing that crime.  Instead, you must find

25    that the defendant took some firm, clear, undeniable action to

accomplish his intent to commit the crime.

However, the substantial step element does not require the government to prove that the defendant did everything except the last act necessary to complete the crime.

In this case the government further alleges that the defendant aided and abetted others in committing Obstruction of an Official Proceeding as charged in Count 1.  A person may be guilty of an offense if he aided and abetted another person in committing that offense.  A person who has aided and abetted another person in committing an offense is often called an accomplice.  The person whom the accomplice aids and abets is known as the principal.

It is not necessary that all the people who committed the crime be caught or identified.  It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of Obstruction of an Official Proceeding because he aided and abetted others in committing the offense, you must find that the government proved beyond a reasonable doubt the following five requirements:

First, that others committed Obstruction of an Official Proceeding by committing each of the elements of the offense charged as I have previously explained.

Second, that the defendant knew that Obstruction of an

Official Proceeding was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the offense.

Fourth, that the defendant knowingly performed that act or those acts for the purpose of aiding and abetting, soliciting, facilitating or encouraging others in committing the offense of Obstruction of an Official Proceeding.

And fifth, that the defendant did that or those acts with the intent that others commit the offense of Obstruction of an Official Proceeding.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government needs to show some affirmative participation by the defendant which at least encouraged others to commit the offense.  That is, you must find that the defendant's act or acts did in some way aid, assist, facilitate, or encourage others to commit the offense.

The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged.  It is enough that the defendant's act or acts further aid, assist, facilitate, or encourage only one or some parts or phases of the offense.  Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant has the required knowledge and intent to satisfy the fourth requirement for aiding and

1    abetting, you may consider both direct and circumstantial

2    evidence, including the defendant's words and actions and other

3    facts and circumstances.  However, evidence that the defendant

4    merely associated with persons involved in a criminal venture or

5    was merely present or was merely a knowing spectator during the

6    commission of the offense is not enough for you to find him

7    guilty as an aider and abettor.

8    If the evidence shows that the defendant knew that the

9    offense was being committed or was about to be committed, but

10    does not also prove beyond a reasonable doubt that it was the

11    defendant's intent and purpose to aid, assist, encourage,

12    facilitate, or otherwise associate himself with the offense, you

13    may not find him guilty of the -- Obstruction of an Official

14    Proceeding as an aider and abettor.  The government must prove

15    beyond a reasonable doubt that the defendant in some way

16    participated in the offense committed by others as something the

17    defendant wished to bring about and to make succeed.

18    Count 2.  Civil disorder.  Count 2 of the indictment charges

19    the defendant with committing or attempting to commit an act to

20    obstruct, impede, or interfere with law enforcement officers

21    lawfully carrying out their official duties incident to a civil

22    disorder, which is a violation of federal law.

23    In order to find the defendant guilty, you must find the

24    following three elements beyond a reasonable doubt:

25    First, that he knowingly committed an act or attempted to

1    commit an act with the intended purpose of obstructing,

2    impeding, or interfering with one or more law enforcement

3    officers.

4    Second, that at the time of the defendant's actual or

5    attempted act, the law enforcement officer or officers were

6    engaged in the lawful performance of their official duties

7    incident to and during a civil disorder.

8    Third, the civil disorder in any way or degree obstructed,

9    delayed, or adversely affected either commerce or the movement

10    of any article or commodity in commerce, or the conduct and

11    performance of any federally protected function.  "Attempt" has

12    the same meaning as that described in Count 1.  "Aiding and

13    abetting" has the same meaning as that described in Count 1.

14    A civil disorder is defined as any public disturbance

15    involving acts of violence by assemblages of three or more

16    persons which causes an immediate danger of or results in damage

17    or injury to the property or person of any other individual.

18    The parties have stipulated to the following with respect to

19    interstate commerce, official duties, and federally protected

20    function:

21    With respect to interstate commerce, the parties have

22    stipulated that the events on the grounds of the U.S. Capitol

23    and in the U.S. Capitol building on January 6, 2021, obstructed,

24    delayed, or adversely affected commerce or the movement of any

25    article or commodity in commerce.  The term "commerce" means

commerce between any state or the District of Columbia and any place outside thereof, (b) between any points within any state or the District of Columbia but through any place outside thereof, or (c) wholly within the District of Columbia.

Under the Constitution, Congress has the exclusive power to enact laws for the District of Columbia.

With respect to official duties, the parties have stipulated that on January 6, 2021, officers from the United States Capitol Police on the U.S. Capitol grounds and in the U.S. Capitol building were engaged in their official duties as officers or employees of the United States or of any agency in any branch of the United States government.

On January 6, 2021, officers from the Washington, D.C., Metropolitan Police Department on the U.S. Capitol grounds and in the U.S. Capitol building were assisting officers from the United States Capitol Police who were engaged in their official duties as officers or employees of the United States or of an agency in any branch of the United States government.

With respect to a federally protected function, the parties have stipulated that the events on the grounds of the U.S. Capitol and in the U.S. Capitol building on January 6, 2021, adversely affected a federally protected function.  That means that the events adversely affected any function, operation, or action carried out under the laws of the United States by any department, agency or instrumentality of the United States or by

1    an officer or employee thereof.

2    The federally protected functions that were adversely

3    affected include the following:

4    The Capitol Police's protection of the U.S. Capitol and the

5    Capitol grounds, and the United States Secret Service's

6    protection of the vice president of the United States and his

7    immediate family members.

8    Count 3, entering or remaining in a restricted building or

9    grounds.  Count 3 of the indictment charges the defendant with

10    entering or remaining in a restricted building or grounds while

11    carrying a dangerous or deadly weapon, which is a violation of

12    federal law.  I'm going to instruct you on this charge and also

13    on the lesser-included offense of entering or remaining in a

14    restricted building or grounds.  After I give you the elements

15    of these crimes, I will tell you in which order you should

16    consider them.

17    In order to find Mr. Robertson guilty of entering or

18    remaining in a restricted building or grounds while carrying a

19    dangerous or deadly weapon, you must find that the government

20    proved each of the following elements beyond a reasonable doubt:

21    First, that the defendant entered or remained in a restricted

22    building without lawful authority to do so.

23    Second, that he did so knowingly.

24    Third, that he carried a deadly or dangerous weapon during

25    and in relation to the offense.

1    In order to find the defendant guilty of entering or
2    remaining in a restricted building or grounds -- and this is the
3    lesser-included offense which does not include the deadly or
4    dangerous weapon -- you must find that the government proved
5    each of the following elements beyond a reasonable doubt:

6    First, that the defendant entered or remained in a restricted
7    building or grounds without lawful authority to do so.  Second,
8    that he did so knowingly.

9    I am now going to instruct you as to the order in which you
10   should consider these offenses.  And there will be a verdict
11   form that will be sent back with you along with the
12   instructions.  And the verdict form will also very clearly tell
13   you in which order to follow the offenses -- to consider the
14   offenses for Count 3.

15   You should consider first whether the defendant is guilty of
16   entering or remaining in a restricted building or grounds while
17   using or -- while carrying a dangerous or deadly weapon.  If you
18   find the defendant guilty, do not go on to the other charge.  If
19   you find the defendant not guilty, go on to consider whether the
20   defendant is guilty of simply entering or remaining in a
21   restricted building or grounds.  And if, after making all
22   reasonable efforts to reach a verdict on the charge that
23   includes carrying a dangerous or deadly weapon, you are not able
24   to do so, you are allowed to consider the other entering or
25   remaining charge.  Again, the order will be reflected in the

1    verdict form that I will be giving you.

2        Okay.  Definitions applicable to that offense.  The

3    term "restricted building" means any posted, cordoned off

4    or otherwise restricted area of a building where a person

5    protected by the Secret Service is or will be temporarily

6    visiting.

7        The term "person protected by the Secret Service" includes

8    the vice president and the immediate family of the vice

9    president.

10        The term "knowingly" has the same meaning as that described

11    in Count 1.  A person acts knowingly if he realizes that what he

12    is doing and is aware -- if he realizes what he is doing and is

13    aware of the nature of his conduct and does not act through

14    ignorance, mistake or accident.  In deciding whether the

15    defendant knowingly entered or remained in a restricted

16    building, you may consider all of the evidence including what

17    the defendant did or said.

18        A person who enters a restricted area with a good-faith

19    belief that he is entering with lawful authority is not guilty

20    of the offense.  Thus, you cannot find the defendant guilty of

21    Count 3 unless you are convinced beyond a reasonable doubt that

22    he did not have a good-faith belief of his lawful authority to

23    enter or remain in the restricted building.

24        The last element the government must prove beyond a

25    reasonable doubt is that the defendant carried a deadly or

dangerous weapon during and in relation to the offense.  Whether the object specified in the indictment, that is a large wooden stick, is a deadly or dangerous weapon depends on the facts of the particular case.  It is for you to decide on the facts of this case whether the large wooden stick allegedly carried by the defendant was in fact a deadly or dangerous weapon.

An object is a deadly or dangerous weapon if it is capable of causing serious bodily injury or death to another person and the defendant intends that it be used in that manner.

The parties have stipulated to certain facts with respect to the Capitol building and grounds -- the definition of Capitol building and grounds and restricted areas.  And again, those stipulations will be sent back to the jury room with you and I would simply refer you to them.

Count 4, disorderly and disruptive conduct in a restricted building.  Count 4 of the indictment charges Mr. Robertson with disorderly or disruptive conduct in a restricted building or grounds while carrying a dangerous or deadly weapon, which is a violation of federal law.  I am going to instruct you on this charge and also on the lesser-included offense of disorderly or disruptive conduct in a restricted building or grounds.  After I give you the elements of these crimes I will tell you in what order you should consider them.

In order to find the defendant guilty of disorderly or disruptive conduct in a restricted building or grounds while

1    carrying a dangerous or deadly weapon, you must find that the

2    government proved each of the following elements beyond a

3    reasonable doubt:

4        First, that the defendant engaged in disorderly or disruptive

5    conduct in or in proximity to any restricted building.

6        Second, that he did so knowingly, with the intent to impede

7    or disrupt the orderly conduct of government business or

8    official functions.

9        Third, that his conduct occurred when or so that his conduct

10   in fact impeded or disrupted the orderly conduct of government

11   business or official functions.

12       Fourth, that the defendant carried a deadly or dangerous

13   weapon during and in relation to the offense.

14       In order to find the defendant guilty of disorderly conduct

15   or disruptive conduct in a restricted building or grounds, you

16   must find that the government proved each of the following

17   elements beyond a reasonable doubt -- and again, this is the

18   lesser-included offense that does not include the dangerous or

19   deadly weapon.

20       First, that he engaged in disorderly or disruptive conduct in

21   or in proximity to any restricted building.

22       Second, that he did so knowingly and with the intent to

23   impede or disrupt the orderly conduct of government business or

24   official functions.

25       And third, that his conduct occurred when or so that his

1    conduct in fact impeded or disrupted the orderly conduct of

2    government business or official functions.

3        I'm now going to instruct you as to the order in which you

4    should consider these offenses.  You should consider first

5    whether the defendant is guilty of disorderly or disruptive

6    conduct in a restricted building or grounds while carrying a

7    dangerous or deadly weapon.  If you find the defendant guilty,

8    do not go on to the other charge.  If you find the defendant not

9    guilty, go on to consider whether the defendant is guilty of

10   disorderly or disruptive conduct in a restricted building or

11   grounds.

12       And if after making all reasonable efforts to reach a verdict

13   on the charge that included carrying a dangerous or deadly

14   weapon, you are not able to do so, you are allowed to consider

15   the other disorderly or disruptive conduct charge.  Again, the

16   order will be reflected in the verdict form that I will send

17   back to you.

18       Applicable definitions as to this offense.  Disorderly

19   conduct occurs when a person is unreasonably loud and disruptive

20   under the circumstances, or interferes with another person by

21   jostling against or unnecessarily crowding that person.

22       Disruptive conduct is a disturbance that interrupts an event,

23   activity, or the normal course of a process.

24       The term "restricted building" has the same meaning as

25   described in Count 3.

1     The term "knowingly" has the same meanings as described in
2     the instructions for Count 1.
3     And the term "dangerous weapon" has the same meaning as
4     described in the instructions for Count 3.
5     The same stipulation I referred to in Count 3 with respect to
6     Capitol building and grounds and restricted area applies to
7     Count 4.
8     Count 5.  Disorderly conduct in a Capitol building.  Count 5
9     of the indictment charges the defendant with disorderly and
10    disruptive conduct in a Capitol building, which is a violation
11    of federal law.  In order to find the defendant guilty of this
12    offense, you must find that the government proved each of the
13    following elements beyond a reasonable doubt:
14    First, that the defendant engaged in disorderly or disruptive
15    conduct in any of the United States Capitol buildings.  Second,
16    that he did so with the intent to impede, disrupt, or disturb
17    the orderly conduct of a session of Congress, or either house of
18    Congress.  And third, that he acted willfully and knowingly.
19    The term "United States Capitol buildings" includes the U.S.
20    Capitol located at First Street Southeast in Washington, D.C.
21    The term "disorderly or disruptive conduct" has the same meaning
22    described in the instructions for Count 4 defining those terms.
23    A person acts willfully if he acts with the intent to do
24    something that the law forbids, that is, to disobey or disregard
25    the law.  Willfully does not, however, require proof that the

defendant be aware of the specific law or rule that his conduct may be violating.

The term "knowingly" has the same meaning as that described in the instruction for Count 1.

The final count, Count 6 of the indictment, charges the defendant with Obstruction of an Official Proceeding in connection with the grand jury investigation or the prosecution of this case, which is a violation of federal law. In order for you to find the defendant guilty of this charge, the government must prove each of the following four elements beyond a reasonable doubt:

First, that the defendant did or attempted to alter, destroy, mutilate, or conceal a record, document or other object. Second, that the defendant acted knowingly. Third, that the defendant acted corruptly. Fourth, that the defendant acted with the intent to impair the object's integrity or availability for use in an official proceeding.

The term "official proceeding" includes a proceeding before a judge or court of the United States or a United States magistrate judge or a federal grand jury. The terms "knowingly," "corruptly," and "attempt" have the same meanings as that described in the instructions for Count 1 defining those terms.

Okay. Two other instructions. Someone's intent or knowledge ordinarily cannot be proved directly because there is no way of

knowing what a person is actually thinking.  But you may infer

someone's intent or knowledge from the surrounding

circumstances.  You may consider any statement made or acts

done by the defendant and all other facts and circumstances

received in evidence which indicate his knowledge or intent.

You may infer, but you are not required to infer, that a

person intends the natural and probable consequences of acts

he intentionally did or intentionally did not do.  It is

entirely up to you, however, to decide what facts to find from

the evidence received during trial.  You should consider all

the circumstances in evidence that you think are relevant in

determining whether the government has proved beyond a

reasonable doubt that the defendant acted with the necessary

state of mind.

Finally, each count of the indictment charges a separate

offense.  You should consider each offense and the evidence

which applies to it separately, and you should return separate

verdicts as to each count.  The fact that you may find the

defendant guilty or not guilty on any one count of the

indictment should not influence your verdict with respect to

any other count of the indictment.

All right.  With that, those are the instructions.  Again,

you will have written copies of all this.  I know it's pretty

dense and difficult to follow just on a first read, but you'll

be able to consult the written instructions.  And I suspect that

1    the lawyers tomorrow in their closings will draw your attention

2    to certain instructions that they would want you to focus on,

3    although, as I said, you must consider all of the instructions

4    as a whole.

5        Counsel, anything before I discharge or excuse the jury for

6    the evening?

7            MS. ALOI:  Nothing from the government.

8            MR. ROLLINS:  Nothing from defense.

9            THE COURT:  All right.  Counsel, what do you think,

10   9:30 tomorrow morning?  You need a few more minutes than

11   usual?  Okay.  We'll give you 30 extra minutes in the morning.

12   And counsel may have some visual displays, so bear with us if

13   it takes a little time to get everything cued up.  But we will

14   start off tomorrow with the government's closing, the

15   defense's closing, and then a brief rebuttal by the

16   government.  Okay?

17       So, again, no discussions about the case, no independent

18   research about the case, get a good night's sleep, and let's

19   get started again in the morning.  Have a good night.

20       (Jury out at 4:47 p.m.)

21       After every trial I tell myself I'm going to sit down and

22   do a hard edit of these instructions to make them easier to

23   read, but I never get around to doing it.  Anyway.

24       All right.  Have a good night.  We'll see you in the

25   morning.

1          MS. ALOI:  Your Honor, we flagged in the instructions

2     where it still references "use" in addition to "carry."  I

3     think you may have read just "carry" for most of them, but

4     if it's helpful we can --

5          THE COURT:  I think I flagged them.  We'll do that.

6       Any other mistakes?  Okay.  See you in the morning.

7        (Proceedings adjourned at 4:48 p.m.)

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*/s/ Bryan A. Wayne*
Bryan A. Wayne

**'**

**'11** [1] - 941:7
**'12** [1] - 945:20

**/**

**/s** [1] - 999:9

**1**

**1** [18] - 939:12, 939:24,
956:13, 956:14,
956:16, 957:13,
979:25, 980:2,
981:4, 981:25,
983:7, 986:12,
986:13, 990:11,
994:2, 995:4, 995:22
**10** [3] - 945:21,
945:22, 954:14
**111** [1] - 961:16
**13** [1] - 957:6
**14** [1] - 950:18
**15** [1] - 955:15
**15-minute** [2] - 952:12
**16** [1] - 951:23
**16-minute** [1] - 952:8
**17** [2] - 955:17, 955:22
**1752** [1] - 961:18
**19** [2] - 947:19, 955:23
**19th** [1] - 942:25
**1:58** [1] - 936:7
**1:59** [1] - 938:23

**2**

**2** [5] - 951:24, 958:1,
979:17, 985:18
**20** [3] - 956:2, 956:6,
956:10
**20001** [1] - 936:22
**20004** [1] - 936:19
**2006** [1] - 940:21
**2009** [2] - 944:5,
945:15
**2010** [2] - 941:7,
945:15
**2011** [2] - 944:8,
945:20
**202** [3] - 936:16,
936:20, 936:23
**2021** [7] - 951:15,
952:2, 952:3,
986:23, 987:8,
987:13, 987:21
**2022** [1] - 936:6

**20530** [1] - 936:16
**21** [3] - 957:13, 968:7,
969:3
**21-0034** [1] - 936:4
**23** [2] - 959:14, 959:21
**25** [1] - 968:9
**252-7566** [1] - 936:16
**29** [1] - 939:9
**2:19** [1] - 954:11
**2:21** [1] - 955:3
**2:54** [1] - 955:3

**3**

**3** [13] - 939:17, 939:24,
958:13, 959:3,
959:7, 979:18,
988:8, 988:9,
989:14, 990:21,
993:25, 994:4, 994:5
**30** [2] - 951:24, 997:11
**30-pound** [1] - 952:8
**3000** [5] - 937:10,
949:12, 951:5,
951:7, 951:8
**333** [1] - 936:22
**35-pound** [1] - 952:13
**354-3186** [1] - 936:23
**3:15** [1] - 954:1
**3:19** [1] - 968:22
**3:55** [1] - 968:22

**4**

**4** [12] - 939:17, 939:24,
955:11, 959:3,
959:7, 967:12,
967:18, 979:19,
991:15, 991:16,
994:7, 994:22
**419** [1] - 936:19
**45** [1] - 953:24
**455-5610** [1] - 936:20
**4704-A** [1] - 936:21
**48** [1] - 951:23
**4:01** [1] - 969:11
**4:47** [1] - 997:20
**4:48** [1] - 998:7

**5**

**5** [7] - 951:15, 952:2,
955:11, 967:16,
979:21, 994:8
**555** [1] - 936:15

**6**

**6** [22] - 941:19, 941:20,
942:21, 943:7,
947:22, 948:4,
948:11, 948:14,
950:9, 950:16,
952:3, 956:14,
956:17, 956:22,
960:13, 967:19,
979:22, 986:23,
987:8, 987:13,
987:21, 995:5
**6th** [1] - 942:13

**7**

**7** [1] - 936:6

**9**

**940** [1] - 937:3
**942** [1] - 937:4
**943** [1] - 937:5
**945** [1] - 937:5
**949** [1] - 937:6
**951** [1] - 937:10
**953** [1] - 937:7
**969** [1] - 937:12
**9:30** [1] - 997:10

**A**

**abets** [1] - 983:11
**abetted** [6] - 980:9,
983:6, 983:8, 983:9,
983:17, 983:19
**abetting** [7] - 958:1,
979:15, 979:17,
980:4, 984:6, 985:1,
986:13
**abettor** [2] - 985:7,
985:14
**ability** [2] - 974:25,
976:9
**able** [6] - 949:22,
962:4, 962:6,
989:23, 993:14,
996:25
**above-entitled** [1] -
999:5
**absolute** [1] - 977:10
**absolutely** [2] -
944:15, 966:3
**academy** [9] - 944:5,
944:24, 945:24,
946:5, 946:13,

946:15, 946:21,
947:1, 947:8
**accept** [3] - 970:10,
976:25, 978:8
**acceptable** [1] -
974:15
**accident** [2] - 981:8,
990:14
**accomplice** [1] -
983:11
**accomplish** [1] -
983:1
**accuracy** [2] - 956:4,
976:7
**accurate** [2] - 976:1,
976:25
**accurately** [1] -
975:20
**accusing** [1] - 972:10
**acknowledgement** [1]
- 964:20
**acquaintance** [1] -
950:3
**acquittal** [2] - 939:8,
939:23
**act** [19] - 973:16,
981:7, 981:11,
981:12, 981:13,
981:20, 981:24,
983:4, 984:3, 984:5,
984:12, 984:16,
984:18, 984:20,
985:19, 985:25,
986:1, 986:5, 990:13
**acted** [10] - 939:15,
980:15, 980:17,
980:20, 981:9,
994:18, 995:14,
995:15, 996:13
**acting** [1] - 981:17
**action** [3] - 957:16,
982:25, 987:24
**actions** [1] - 985:2
**activated** [1] - 950:15
**activity** [1] - 993:23
**acts** [15] - 981:6,
984:3, 984:6, 984:9,
984:12, 984:16,
984:18, 984:20,
984:22, 986:15,
990:11, 994:23,
996:3, 996:7
**actual** [3] - 944:21,
974:1, 984:4
**added** [3] - 958:2,
967:16
**adding** [1] - 965:19
**addition** [2] - 957:17,
998:2
**additional** [1] - 967:14

**addressing** [1] -
961:19
**adjourn** [1] - 954:6
**adjourned** [1] - 998:7
**admissible** [1] - 979:5
**admission** [1] - 951:4
**admitted** [5] - 951:7,
968:17, 970:16,
971:17, 971:19
**adopted** [2] - 957:13,
967:12
**adult** [1] - 951:23
**adversely** [5] - 986:9,
986:24, 987:22,
987:23, 988:2
**advisement** [2] -
955:1, 966:15
**affect** [3] - 974:25,
975:2, 977:6
**affected** [5] - 986:9,
986:24, 987:22,
987:23, 988:3
**affects** [1] - 975:22
**Afghanistan** [2] -
941:7, 941:14
**AFTERNOON** [1] -
936:8
**afternoon** [9] -
940:13, 942:8,
945:12, 945:13,
949:7, 949:8, 953:3,
953:4, 968:14
**agency** [3] - 987:11,
987:18, 987:25
**Agent** [6] - 949:2,
949:7, 949:16,
951:13, 952:7,
954:12
**agent** [1] - 950:6
**ago** [2] - 945:21,
945:22
**agree** [3] - 963:7,
966:23, 967:13
**agreed** [7] - 958:4,
958:5, 958:6, 958:9,
971:22, 978:2, 978:3
**agreement** [8] - 956:1,
978:2, 978:8,
978:12, 978:13,
978:17, 978:18,
978:21
**agrees** [1] - 956:8
**aid** [5] - 971:11,
984:16, 984:18,
984:21, 985:11
**aided** [7] - 936:25,
980:9, 983:6, 983:8,
983:9, 983:16,
983:19
**aider** [2] - 985:7,

985:14
**aiding** [7] - 958:1,
979:15, 979:17,
980:4, 984:6,
984:25, 986:12
**aids** [1] - 983:11
**Air** [2] - 952:10,
952:11
**alleged** [2] - 956:15,
969:21
**allegedly** [1] - 991:5
**alleges** [1] - 983:5
**allow** [1] - 975:1
**allowed** [2] - 989:24,
993:14
**Aloi** [3] - 938:25,
946:11, 965:6
**ALOI** [25] - 936:14,
939:1, 942:7,
943:10, 945:11,
946:12, 946:20,
947:4, 947:13,
947:16, 948:16,
955:6, 955:14,
955:21, 956:9,
956:19, 956:21,
958:10, 958:25,
959:8, 967:24,
968:2, 969:9, 997:7,
998:1
**alone** [5] - 970:17,
970:18, 971:3,
975:16, 978:10
**alter** [1] - 995:12
**AMERICA** [1] - 936:3
**answer** [3] - 979:8,
979:9, 979:11
**answered** [1] - 979:9
**anyway** [1] - 997:23
**apologies** [1] - 969:13
**APPEARANCES**[1] -
936:13
**applicable** [2] - 990:2,
993:18
**applies** [3] - 970:10,
994:6, 996:17
**apply** [2] - 977:22,
980:21
**approach** [1] - 958:20
**approaches** [1] -
962:19
**appropriate** [1] -
966:24
**April** [3] - 936:6,
951:15, 952:2
**area** [7] - 959:1, 959:6,
969:5, 969:7, 990:4,
990:18, 994:6
**areas** [1] - 991:12
**argue** [1] - 961:8

**argument** [1] - 978:25
**arguments** [2] - 954:7,
972:4
**Army** [1] - 952:10
**Arrington** [10] -
958:24, 959:10,
960:18, 961:6,
961:14, 961:15,
964:6, 964:7,
964:10, 964:13
**article** [2] - 986:10,
986:25
**asleep** [1] - 974:13
**ASP** [2] - 946:2, 946:3
**assault** [2] - 961:16,
964:7
**Assault** [2] - 952:10,
952:11
**assemblages** [1] -
986:15
**asserts** [1] - 974:1
**assist** [5] - 972:5,
984:16, 984:18,
984:21, 985:11
**assisting** [1] - 987:15
**associate** [1] - 985:12
**associated** [2] -
980:7, 985:4
**assume** [2] - 974:5,
974:8
**assumed** [1] - 964:7
**attach** [1] - 948:2
**attempt** [9] - 980:3,
981:25, 982:2,
982:5, 982:15,
982:16, 982:22,
986:11, 995:21
**attempted** [5] - 980:8,
980:14, 985:25,
986:5, 995:12
**attempting** [1] -
985:19
**attempts** [1] - 981:16
**attended** [1] - 952:10
**attention** [3] - 941:18,
978:6, 997:1
**Attorney's** [1] - 936:15
**attorneys** [1] - 971:4
**AUSA** [2] - 936:14,
936:14
**authority** [4] - 988:22,
989:7, 990:19,
990:22
**availability** [1] -
995:16
**Avenue** [1] - 936:22
**aware** [7] - 942:24,
943:3, 947:18,
981:7, 990:12,
990:13, 995:1

**awareness** [2] -
980:17, 981:14

**B**

**B-O-B-B-O-U-I-N-E** [1]
- 940:15
**backpack** [1] - 945:3
**bad** [1] - 941:17
**based** [6] - 952:16,
964:18, 973:9,
973:10, 973:18,
973:19
**basis** [1] - 978:9
**baton** [2] - 946:2,
946:3
**batons** [2] - 946:1,
946:2
**bear** [2] - 969:16,
997:12
**became** [2] - 944:9,
944:11
**BEFORE** [1] - 936:10
**begin** [1] - 969:19
**beginning** [2] -
945:15, 971:10
**behalf** [1] - 938:10
**behavior** [1] - 975:23
**belief** [2] - 990:19,
990:22
**believability** [1] -
970:19
**believable** [1] - 975:10
**bench** [2] - 940:3,
947:15
**Bench** [2] - 939:6,
946:10
**BERKOWER** [33] -
936:14, 949:1,
949:6, 949:9,
949:15, 951:4,
951:10, 951:12,
952:24, 953:17,
959:9, 959:14,
959:20, 959:25,
960:2, 960:12,
960:20, 960:25,
961:10, 961:13,
961:25, 963:19,
963:22, 963:24,
964:8, 964:14,
964:22, 964:25,
965:6, 966:16,
966:19, 966:21,
967:7
**Berkower** [1] - 967:4
**best** [2] - 940:23,
942:11
**between** [9] - 950:8,

950:24, 954:18,
960:9, 961:14,
976:10, 976:14,
987:1, 987:2
**beyond** [31] - 939:10,
947:8, 959:21,
972:17, 972:21,
972:25, 973:3,
973:8, 973:20,
973:22, 975:13,
978:10, 980:12,
981:1, 982:7,
982:18, 982:19,
983:15, 983:21,
985:10, 985:15,
985:24, 988:20,
989:5, 990:21,
990:24, 992:2,
992:17, 994:13,
995:10, 996:12
**bias** [1] - 977:5
**biased** [1] - 977:4
**big** [2] - 941:8, 945:7
**bit** [3] - 965:22,
969:13, 969:16
**blown** [2] - 941:8,
944:16
**Bobbouine** [2] -
940:8, 940:15
**BOBBOUINE** [2] -
937:3, 940:10
**bodily** [4] - 961:24,
965:10, 966:11,
991:8
**body** [1] - 953:8
**book** [2] - 958:19,
967:17
**box** [1] - 951:16
**branch** [2] - 987:11,
987:18
**brandishing** [1] -
961:8
**bribing** [1] - 981:22
**brief** [4] - 949:2,
960:21, 961:10,
997:15
**briefly** [1] - 963:19
**bring** [4] - 938:21,
968:12, 978:5,
985:17
**broke** [1] - 938:3
**brought** [3] - 939:21,
961:3, 962:3
**Bryan** [2] - 999:9,
999:9
**BRYAN** [2] - 936:21,
999:3
**Buckley** [5] - 950:1,
950:3, 950:9,
950:24, 951:21

**building** [39] - 954:2,
962:19, 969:4,
969:6, 979:18,
979:19, 979:21,
986:23, 987:10,
987:15, 987:21,
988:8, 988:10,
988:14, 988:18,
988:22, 989:2,
989:7, 989:16,
989:21, 990:3,
990:4, 990:16,
990:23, 991:11,
991:12, 991:16,
991:17, 991:21,
991:25, 992:5,
992:15, 992:21,
993:6, 993:10,
993:24, 994:6,
994:8, 994:10
**buildings** [2] - 994:15,
994:19
**bunch** [2] - 942:3,
944:23
**burden** [3] - 972:17,
973:2, 973:21
**Bureau** [1] - 977:18
**business** [4] - 992:7,
992:11, 992:23,
993:2
**BY** [9] - 940:12, 942:7,
943:20, 945:11,
947:16, 949:6,
949:15, 951:12,
953:2

**C**

**CAMILIERE** [2] -
937:6, 949:4
**Camiliere** [5] - 949:3,
949:16, 951:13,
952:7, 954:12
**CAMILLE** [1] - 936:18
**cane** [5] - 941:15,
944:19, 944:21,
953:13
**cannot** [4] - 963:7,
973:12, 990:20,
995:25
**capability** [1] - 977:7
**capable** [5] - 952:19,
965:3, 965:9,
966:10, 991:7
**Capitol** [27] - 948:4,
962:19, 969:4,
969:6, 977:17,
979:21, 986:22,
986:23, 987:8,
987:9, 987:14,

987:15, 987:16, 987:21, 988:4, 988:5, 991:11, 994:6, 994:8, 994:10, 994:15, 994:19, 994:20
**car** [1] - 960:19
**careful** [2] - 973:11, 973:15
**carriage** [3] - 962:8, 964:18, 965:19
**carried** [18] - 939:18, 939:20, 943:7, 947:22, 948:14, 959:17, 959:24, 960:4, 960:16, 961:1, 965:12, 966:5, 966:7, 987:24, 988:24, 990:25, 991:5, 992:12
**carry** [6] - 961:9, 961:22, 967:5, 967:6, 998:2, 998:3
**carrying** [23] - 959:15, 960:23, 961:18, 962:10, 962:23, 963:9, 963:13, 963:16, 964:1, 964:4, 964:14, 966:2, 966:12, 985:21, 988:11, 988:18, 989:17, 989:23, 991:18, 992:1, 993:6, 993:13
**case** [52] - 938:6, 938:11, 939:1, 939:3, 939:4, 940:1, 942:19, 948:8, 949:2, 953:18, 953:20, 953:21, 954:3, 954:4, 956:24, 957:15, 958:24, 959:10, 960:13, 961:15, 961:16, 963:4, 969:15, 969:18, 969:22, 970:7, 970:10, 970:15, 970:23, 970:25, 971:2, 971:12, 972:8, 972:14, 973:11, 973:24, 974:20, 976:5, 976:6, 977:10, 977:20, 978:3, 978:24, 979:13, 979:24, 983:5, 991:4, 991:5, 995:8, 997:17, 997:18

**case-in-chief** [1] - 939:3
**cases** [3] - 963:3, 973:4, 973:6
**caught** [1] - 983:14
**causes** [1] - 986:16
**causing** [4] - 965:3, 965:9, 966:10, 991:8
**caution** [1] - 978:22
**cell** [5] - 949:17, 949:25, 950:13, 950:15, 950:20
**Cellebrite** [3] - 949:20, 950:12, 950:23
**certain** [10] - 960:17, 961:1, 961:2, 962:21, 963:17, 969:6, 971:22, 978:4, 991:10, 997:2
**certainty** [2] - 973:21, 974:20
**CERTIFICATE** [1] - 999:2
**certification** [2] - 956:16, 979:15
**certify** [2] - 981:5, 999:3
**Chan** [1] - 936:18
**change** [1] - 967:1
**changed** [2] - 956:12, 956:13
**changes** [5] - 938:2, 954:8, 954:22, 957:22, 968:11
**charge** [17] - 954:17, 958:5, 958:19, 963:5, 963:25, 972:24, 973:1, 975:2, 988:12, 989:18, 989:22, 989:25, 991:20, 993:8, 993:13, 993:15, 995:9
**charged** [12] - 939:11, 959:15, 964:3, 964:4, 972:8, 972:23, 979:13, 981:25, 983:7, 983:24, 984:13, 984:20
**charges** [14] - 964:1, 969:21, 974:24, 975:12, 978:4, 978:5, 980:1, 980:3, 985:18, 988:9, 991:16, 994:9, 995:5, 996:15
**chief** [1] - 939:3
**chosen** [1] - 977:11
**CHRISTOPHER** [1] -

936:10
**Circuit** [1] - 958:24
**circumstances** [9] - 974:3, 975:7, 976:8, 976:11, 985:3, 993:20, 996:3, 996:4, 996:11
**circumstantial** [8] - 973:25, 974:4, 974:12, 974:14, 974:18, 974:19, 974:22, 985:1
**cited** [1] - 963:3
**civil** [9] - 958:1, 958:3, 973:4, 979:17, 985:18, 985:21, 986:7, 986:8, 986:14
**claim** [1] - 965:25
**clean** [1] - 968:16
**clear** [4] - 950:15, 958:7, 962:7, 982:25
**cleared** [1] - 944:18
**clearly** [1] - 989:12
**clerk** [1] - 949:10
**CLERK** [1] - 968:19
**closing** [3] - 954:7, 997:14, 997:15
**closings** [2] - 967:22, 997:1
**colleague** [1] - 963:6
**colleagues** [1] - 961:13
**college** [2] - 979:16, 981:5
**colored** [1] - 977:6
**Columbia** [4] - 987:1, 987:3, 987:4, 987:6
**COLUMBIA** [1] - 936:1
**combination** [1] - 964:19
**comfortable** [1] - 938:16
**commerce** [8] - 986:9, 986:10, 986:19, 986:21, 986:24, 986:25, 987:1
**commission** [1] - 985:6
**commit** [15] - 980:4, 982:1, 982:2, 982:5, 982:9, 982:14, 982:16, 982:20, 982:22, 983:1, 984:10, 984:15, 984:17, 985:19, 986:1
**committed** [10] - 939:11, 983:13, 983:15, 983:22, 984:1, 984:2, 985:9,

985:16, 985:25
**committing** [10] - 982:12, 982:24, 983:6, 983:9, 983:10, 983:17, 983:20, 983:23, 984:7, 985:19
**commodity** [2] - 986:10, 986:25
**communication** [2] - 950:24, 951:14
**communications** [3] - 949:22, 950:1, 950:8
**complete** [3] - 953:22, 982:3, 983:4
**completely** [1] - 962:9
**computer** [1] - 936:25
**computer-aided** [1] - 936:25
**conceal** [1] - 995:13
**concern** [1] - 964:3
**concerning** [1] - 950:24
**conclude** [1] - 970:6
**concluding** [1] - 967:21
**conditions** [1] - 952:22
**conduct** [36] - 967:17, 970:8, 979:19, 979:21, 980:18, 981:7, 981:24, 986:10, 990:13, 991:15, 991:17, 991:21, 991:25, 992:5, 992:7, 992:9, 992:10, 992:14, 992:15, 992:20, 992:23, 992:25, 993:1, 993:6, 993:10, 993:15, 993:19, 993:22, 994:8, 994:10, 994:15, 994:17, 994:21, 995:1
**confer** [1] - 967:10
**conference** [5] - 939:6, 940:3, 946:10, 947:15, 954:17
**conferred** [1] - 953:23
**conferring** [1] - 961:12
**confirms** [1] - 982:13
**confuse** [1] - 963:14
**confused** [1] - 963:23
**confuses** [1] - 965:20
**confusing** [1] - 967:15
**congratulations** [1] - 955:8

**Congress** [4] - 980:23, 987:5, 994:17, 994:18
**Congress's** [2] - 979:15, 981:5
**connection** [2] - 964:2, 995:7
**cons** [1] - 938:13
**consciousness** [2] - 981:13
**consequences** [1] - 996:7
**consider** [38] - 970:2, 970:11, 971:16, 971:22, 971:24, 972:10, 972:11, 974:21, 975:2, 975:7, 975:14, 975:21, 975:23, 976:8, 976:20, 976:23, 977:1, 977:5, 978:16, 978:18, 981:9, 985:1, 988:16, 989:10, 989:13, 989:15, 989:19, 989:24, 990:16, 991:23, 993:4, 993:9, 993:14, 996:3, 996:10, 996:16, 997:3
**consideration** [2] - 970:23, 973:12
**considered** [1] - 978:22
**consistent** [2] - 957:19, 960:18
**consists** [1] - 971:17
**Constitution** [2] - 936:22, 987:5
**constitutional** [1] - 981:18
**consult** [1] - 996:25
**contains** [1] - 979:13
**content** [1] - 951:22
**context** [1] - 961:19
**contradicted** [1] - 977:1
**contrast** [1] - 981:21
**control** [1] - 971:6
**conversations** [1] - 946:16
**convict** [2] - 964:18, 978:9
**convinced** [2] - 973:13, 990:21
**convinces** [1] - 978:10
**COOPER** [1] - 936:10
**cooperation** [1] - 978:5

copies [2] - 954:15, 996:23
copy [1] - 969:24
cordoned [1] - 990:3
correct [6] - 950:22, 953:9, 953:10, 960:24, 969:1, 999:4
corroborates [1] - 982:13
corruptly [11] - 939:16, 957:18, 980:1, 980:10, 980:20, 981:11, 981:17, 981:20, 981:24, 995:15, 995:21
counsel [5] - 954:14, 969:3, 997:5, 997:9, 997:12
Count [43] - 939:12, 956:13, 956:14, 956:16, 956:17, 956:22, 957:13, 958:1, 958:13, 959:3, 959:7, 967:12, 967:16, 967:18, 967:19, 979:25, 980:2, 981:4, 981:25, 983:7, 985:18, 986:12, 986:13, 988:9, 989:14, 990:11, 990:21, 991:15, 991:16, 993:25, 994:2, 994:4, 994:5, 994:7, 994:8, 994:22, 995:4, 995:5, 995:22
count [8] - 958:14, 985:18, 988:8, 995:5, 996:15, 996:18, 996:19, 996:21
counts [1] - 979:14
Counts [2] - 939:17, 939:24
couple [2] - 943:2, 958:13
course [4] - 949:16, 949:25, 979:6, 993:23
court [4] - 974:6, 981:17, 981:21, 995:19
COURT [77] - 936:1, 938:2, 938:6, 938:13, 938:16, 938:19, 938:21, 938:24, 939:2, 939:25, 940:4,

940:9, 943:12, 946:11, 946:18, 947:3, 947:5, 947:10, 947:14, 948:17, 948:19, 948:25, 949:13, 951:7, 951:11, 953:19, 954:12, 955:1, 955:4, 955:8, 955:15, 955:22, 956:6, 956:8, 956:10, 956:20, 957:1, 957:9, 957:12, 957:25, 958:11, 958:13, 959:4, 959:6, 959:13, 959:19, 959:24, 960:1, 960:7, 960:13, 960:22, 961:6, 961:11, 961:22, 962:25, 963:21, 963:23, 964:6, 964:10, 964:19, 964:23, 965:1, 965:23, 966:14, 966:18, 966:20, 966:25, 967:4, 967:9, 967:25, 968:8, 968:11, 968:20, 968:23, 969:12, 997:9, 998:5
Court [9] - 936:21, 939:25, 949:14, 961:15, 961:18, 961:20, 963:7, 964:15, 999:3
Court's [2] - 957:22, 960:21
Courthouse [1] - 936:21
courtroom [2] - 942:17, 954:3
CR [1] - 936:4
CRC [1] - 936:4
credibility [5] - 970:18, 975:15, 975:18, 975:22, 977:21
credit [1] - 977:2
crime [13] - 964:8, 972:10, 982:3, 982:9, 982:14, 982:20, 982:24, 983:1, 983:4, 983:14, 983:15, 983:17
crimes [3] - 939:11, 988:15, 991:22
criminal [4] - 972:14,

973:6, 977:10, 985:4
Criminal [1] - 939:8
Cross [3] - 937:4, 937:5, 937:7
CROSS [3] - 942:6, 945:10, 953:1
CROSS-EXAMINATION [3] - 942:6, 945:10, 953:1
Cross-Examination.. ................... [3] - 937:4, 937:5, 937:7
crowding [1] - 993:21
CRR [1] - 936:21
cued [1] - 997:13
cut [1] - 965:21

# D

D.C [5] - 936:6, 941:19, 958:24, 987:13, 994:20
damage [2] - 962:4, 986:16
danger [1] - 986:16
dangerous [49] - 939:19, 939:21, 951:24, 958:16, 958:23, 959:23, 960:9, 960:10, 960:15, 960:16, 960:17, 961:5, 961:23, 962:3, 962:16, 962:23, 963:9, 963:10, 963:12, 963:13, 964:2, 964:4, 964:11, 964:12, 964:15, 965:2, 965:9, 965:21, 966:1, 966:7, 966:10, 988:11, 988:19, 988:24, 989:4, 989:17, 989:23, 991:1, 991:3, 991:6, 991:7, 991:18, 992:1, 992:12, 992:18, 993:7, 993:13, 994:3
date [3] - 943:4, 951:13, 952:1
dates [1] - 943:1
days [1] - 941:18
DC [3] - 936:16, 936:19, 936:22
deadly [26] - 939:19, 939:21, 958:16, 958:22, 959:22, 964:1, 965:2, 965:8,

966:7, 966:10, 988:11, 988:19, 988:24, 989:3, 989:17, 989:23, 990:25, 991:3, 991:6, 991:7, 991:18, 992:1, 992:12, 992:19, 993:7, 993:13
death [5] - 961:24, 965:3, 965:10, 966:11, 991:8
decide [8] - 970:16, 970:17, 970:18, 970:22, 970:25, 974:16, 991:4, 996:9
deciding [3] - 981:8, 984:24, 990:14
decision [4] - 938:16, 977:12, 977:14, 977:15
decline [1] - 978:4
Defendant [2] - 936:7, 936:17
defendant [105] - 938:8, 938:9, 940:18, 943:6, 945:14, 946:8, 946:24, 947:21, 948:10, 949:18, 949:23, 950:4, 950:8, 950:24, 951:19, 952:17, 955:16, 959:14, 959:22, 964:23, 965:4, 966:12, 966:22, 972:8, 972:14, 972:16, 975:13, 977:10, 978:9, 978:20, 980:1, 980:3, 980:8, 980:10, 980:14, 980:15, 980:17, 980:19, 981:3, 981:9, 981:10, 981:11, 981:12, 981:25, 982:3, 982:5, 982:9, 982:11, 982:13, 982:16, 982:22, 982:25, 983:3, 983:6, 983:16, 983:18, 983:25, 984:3, 984:5, 984:9, 984:12, 984:14, 984:24, 985:3, 985:8, 985:15, 985:17, 985:19, 985:23, 988:9, 988:21, 989:1,

989:6, 989:15, 989:18, 989:19, 989:20, 990:15, 990:17, 990:20, 990:25, 991:6, 991:9, 991:24, 992:4, 992:12, 992:14, 993:5, 993:7, 993:8, 993:9, 994:9, 994:11, 994:14, 995:1, 995:6, 995:9, 995:12, 995:14, 995:15, 996:4, 996:13, 996:19
DEFENDANT [3] - 938:12, 938:15, 938:18
defendant's [18] - 942:11, 942:24, 943:4, 947:18, 950:13, 957:17, 967:13, 973:13, 977:15, 978:10, 982:19, 984:16, 984:18, 984:20, 984:22, 985:2, 985:11, 986:4
defense [8] - 938:6, 940:4, 940:7, 948:23, 953:19, 955:20, 963:1, 997:8
DEFENSE [2] - 940:10, 943:18
defense's [2] - 957:15, 997:15
defensive [1] - 939:22
defined [2] - 982:10, 986:14
defining [5] - 964:4, 964:11, 965:21, 994:22, 995:22
definition [13] - 957:18, 958:2, 958:8, 958:22, 959:6, 959:10, 959:11, 962:8, 963:2, 964:12, 964:16, 967:16, 991:11
definitions [6] - 958:2, 960:8, 980:7, 980:21, 990:2, 993:18
degree [2] - 974:19, 986:8
delayed [2] - 986:9, 986:24
deliberations [8] - 954:1, 969:19,

969:25, 970:6,
971:6, 971:9,
971:16, 979:11
**demeanor** [1] - 975:23
**dense** [1] - 996:24
**Department** [2] -
977:17, 987:14
**department** [3] -
940:21, 944:24,
987:25
**DEPUTY** [1] - 968:19
**describe** [2] - 957:4,
957:5
**described** [10] -
975:20, 986:12,
986:13, 990:10,
993:25, 994:1,
994:4, 994:22,
995:3, 995:22
**deserves** [1] - 978:23
**desire** [1] - 977:6
**destroy** [1] - 995:12
**detail** [1] - 976:21
**details** [1] - 976:12
**determine** [7] -
970:14, 970:20,
973:23, 975:8,
975:16, 977:5, 980:8
**determined** [1] - 975:5
**determining** [3] -
975:12, 976:25,
996:12
**different** [6] - 950:20,
956:25, 964:12,
971:5, 976:14,
978:17
**differently** [1] - 976:17
**difficult** [1] - 996:24
**direct** [9] - 941:18,
947:9, 973:24,
974:2, 974:7,
974:14, 974:17,
974:21, 985:1
**DIRECT** [3] - 940:11,
943:19, 949:5
**Direct** [3] - 937:3,
937:5, 937:6
**directly** [1] - 995:25
**disagreements** [1] -
954:18
**discharge** [1] - 997:5
**discredit** [1] - 976:15
**discrepancy** [2] -
976:19, 976:21
**discuss** [1] - 954:19
**discussed** [1] -
938:13
**discussions** [2] -
954:3, 997:17
**dishonestly** [1] -

957:18
**dismiss** [1] - 978:4
**disobey** [1] - 994:24
**disorder** [8] - 958:1,
958:3, 979:17,
985:18, 985:22,
986:7, 986:8, 986:14
**disorderly** [18] -
967:17, 979:19,
979:21, 991:15,
991:17, 991:20,
991:24, 992:4,
992:14, 992:20,
993:5, 993:10,
993:15, 993:18,
994:8, 994:9,
994:14, 994:21
**disparities** [1] -
976:13
**displaying** [1] - 961:8
**displays** [1] - 997:12
**dispute** [2] - 955:18,
956:4
**disregard** [1] - 994:24
**disrupt** [3] - 992:7,
992:23, 994:16
**disrupted** [2] - 992:10,
993:1
**disruptive** [17] -
967:17, 979:19,
991:15, 991:17,
991:21, 991:25,
992:4, 992:15,
992:20, 993:5,
993:10, 993:15,
993:19, 993:22,
994:10, 994:14,
994:21
**distinction** [1] -
961:14
**distinguish** [1] - 960:8
**District** [4] - 987:1,
987:3, 987:4, 987:6
**DISTRICT** [3] - 936:1,
936:1, 936:11
**disturb** [1] - 994:16
**disturbance** [2] -
986:14, 993:22
**document** [5] - 949:9,
949:14, 950:11,
957:16, 995:13
**done** [2] - 970:24,
996:4
**doubt** [38] - 939:11,
959:22, 972:17,
972:22, 973:1,
973:3, 973:8, 973:9,
973:10, 973:14,
973:18, 973:19,
973:21, 973:22,

975:13, 978:11,
980:13, 981:1,
982:7, 982:18,
983:15, 983:21,
985:10, 985:15,
985:24, 988:20,
989:5, 990:21,
990:25, 992:3,
992:17, 994:13,
995:11, 996:13
**down** [5] - 943:15,
948:22, 954:12,
954:13, 997:21
**draining** [1] - 941:16
**draw** [4] - 971:24,
972:12, 977:14,
997:1
**drawn** [1] - 974:3
**duplicative** [1] -
967:14
**during** [20] - 948:2,
962:10, 962:23,
965:12, 965:15,
969:25, 970:17,
970:24, 971:6,
971:7, 971:9,
971:16, 971:21,
979:6, 985:5, 986:7,
988:24, 991:1,
992:13, 996:10
**duties** [6] - 985:21,
986:6, 986:19,
987:7, 987:10,
987:17
**duty** [3] - 944:18,
970:10, 972:23

---

# E

**easier** [1] - 997:22
**Ed** [6] - 943:17, 950:1,
950:3, 950:9,
950:24, 951:21
**edit** [1] - 997:22
**Edward** [1] - 943:23
**EDWARD** [3] - 937:5,
943:18, 943:23
**effect** [1] - 980:18
**effects** [1] - 976:19
**efficient** [1] - 970:8
**efforts** [2] - 989:22,
993:12
**either** [4] - 977:4,
977:23, 986:9,
994:17
**elaborated** [1] -
956:16
**elapsed** [1] - 976:10
**election** [1] - 962:18

**electoral** [3] - 979:16,
981:5
**electronic** [1] - 968:17
**element** [12] - 957:15,
958:8, 959:21,
961:21, 964:8,
965:13, 972:22,
972:25, 982:15,
982:21, 983:2,
990:24
**elements** [17] - 958:6,
961:16, 961:17,
980:6, 980:12,
980:22, 982:8,
983:23, 985:24,
988:14, 988:20,
989:5, 991:22,
992:2, 992:17,
994:13, 995:10
**ELIZABETH** [1] -
936:14
**employee** [1] - 988:1
**employees** [2] -
987:11, 987:17
**enact** [1] - 987:6
**encourage** [4] -
984:17, 984:19,
984:21, 985:11
**encouraged** [1] -
984:15
**encouraging** [1] -
984:7
**End** [2] - 940:3,
947:15
**end** [6] - 944:8,
945:15, 959:11,
965:7, 965:10,
966:21
**ends** [2] - 964:5, 966:9
**enforcement** [13] -
943:3, 943:7, 946:6,
946:14, 946:17,
946:24, 947:2,
947:22, 977:19,
977:24, 985:20,
986:2, 986:5
**engaged** [6] - 986:6,
987:10, 987:16,
992:4, 992:20,
994:14
**engaging** [1] - 981:23
**enhancement** [1] -
966:3
**enter** [2] - 978:7,
990:23
**entered** [8] - 978:1,
978:11, 978:16,
978:19, 978:21,
988:21, 989:6,
990:15

**entering** [10] - 979:18,
988:8, 988:10,
988:13, 988:17,
989:1, 989:16,
989:20, 989:24,
990:19
**enters** [1] - 990:18
**entire** [2] - 953:20,
969:4
**entirely** [2] - 950:20,
996:9
**entitled** [3] - 972:3,
977:9, 999:5
**equal** [1] - 974:18
**error** [1] - 976:22
**ESQ** [2] - 936:17,
936:18
**essentially** [3] -
957:13, 958:23,
967:12
**ethnic** [1] - 970:22
**evaluated** [1] - 977:19
**evaluating** [3] -
975:18, 976:7,
977:20
**evening** [2] - 954:6,
997:6
**event** [7] - 976:8,
976:10, 976:11,
976:12, 977:22,
993:22
**events** [3] - 986:22,
987:20, 987:23
**evidence** [65] -
939:13, 939:20,
942:19, 948:8,
951:9, 953:21,
955:23, 957:3,
959:2, 962:21,
968:18, 969:18,
970:16, 970:18,
970:23, 971:4,
971:5, 971:11,
971:13, 971:16,
971:17, 971:19,
971:23, 971:24,
972:2, 972:4, 972:6,
972:7, 972:11,
972:12, 972:19,
972:23, 973:11,
973:12, 973:23,
973:24, 973:25,
974:2, 974:4, 974:7,
974:12, 974:14,
974:16, 974:17,
974:19, 974:21,
975:3, 975:5, 975:7,
977:2, 977:20,
978:1, 978:25,
979:4, 981:9,

982:18, 985:2, 985:3, 985:8, 990:16, 996:5, 996:10, 996:11, 996:16
**exact** [1] - 943:1
**exactly** [1] - 947:4
**exam** [1] - 949:11
**EXAMINATION** [6] - 940:11, 942:6, 943:19, 945:10, 949:5, 953:1
**examination** [2] - 947:9, 949:25
**Examination.............**
**.......** [3] - 937:3, 937:5, 937:6
**Examination.............**
**........** [3] - 937:4, 937:5, 937:7
**examine** [2] - 949:17, 949:22
**example** [3] - 974:4, 975:23, 981:17
**except** [1] - 983:3
**exclusive** [1] - 987:5
**excuse** [2] - 954:1, 997:5
**excused** [2] - 943:13, 948:19
**exercise** [1] - 977:11
**exertion** [1] - 952:19
**Exhibit** [4] - 937:10, 949:11, 951:5, 951:8
**exhibit** [1] - 949:10
**exhibits** [4] - 955:24, 968:15, 971:18
**EXHIBITS** [1] - 937:9
**expandable** [1] - 946:4
**expected** [1] - 969:12
**experience** [2] - 972:2, 976:18
**expert** [1] - 945:19
**explain** [4] - 954:18, 958:17, 980:6, 980:7
**explained** [2] - 972:8, 983:24
**expressed** [1] - 971:1
**extendable** [1] - 946:3
**extended** [1] - 941:13
**extent** [2] - 961:18, 975:17
**extra** [1] - 997:11
**eyewitness** [1] - 973:25

# F

**facilitate** [4] - 984:17, 984:19, 984:21, 985:12
**facilitating** [1] - 984:7
**fact** [12] - 939:21, 953:5, 953:11, 961:17, 971:23, 973:5, 974:1, 974:15, 991:6, 992:10, 993:1, 996:18
**facts** [16] - 969:6, 970:14, 970:15, 970:20, 971:19, 971:22, 971:25, 973:24, 974:2, 975:7, 985:3, 991:3, 991:4, 991:10, 996:4, 996:9
**failed** [2] - 939:12, 939:17, 972:25
**failure** [1] - 976:17
**fair** [4] - 970:8, 970:23, 974:25, 975:3
**fairly** [2] - 972:3, 977:9
**faith** [2] - 990:18, 990:22
**falling** [2] - 974:6, 974:8
**false** [1] - 978:14
**falsehood** [1] - 976:22
**falsely** [1] - 978:20
**familiar** [2] - 952:7, 952:9
**family** [2] - 988:7, 990:8
**favor** [1] - 974:15
**favorable** [1] - 939:10
**favoritism** [1] - 970:21
**FBI** [1] - 950:6
**fear** [1] - 970:20
**federal** [7] - 980:2, 985:22, 988:12, 991:19, 994:11, 995:8, 995:20
**Federal** [2] - 939:8, 977:17
**federally** [5] - 986:11, 986:19, 987:19, 987:22, 988:2
**feet** [1] - 941:12
**fellow** [1] - 944:9
**few** [3] - 947:17, 955:5, 997:10
**fifth** [2] - 957:15, 984:9

**final** [6] - 953:24, 966:15, 966:16, 969:1, 969:14, 995:5
**finalize** [1] - 954:15
**finally** [1] - 996:15
**fine** [6] - 947:12, 947:14, 967:2, 967:7, 967:8, 967:10
**firm** [1] - 982:25
**firmly** [1] - 973:13
**first** [22] - 940:4, 941:6, 944:6, 958:14, 959:16, 959:20, 979:14, 980:6, 980:14, 982:9, 982:15, 983:22, 985:25, 988:21, 989:6, 989:15, 992:4, 992:20, 993:4, 994:14, 995:12, 996:24
**First** [1] - 994:20
**fit** [1] - 952:17
**fitness** [1] - 950:25
**five** [3] - 938:5, 954:14, 983:21
**fix** [2] - 965:7, 965:22
**flag** [1] - 948:2
**flagged** [2] - 998:1, 998:5
**flagpole** [6] - 943:8, 947:3, 947:11, 947:23, 947:24
**focus** [1] - 997:2
**folks** [1] - 938:2
**follow** [5] - 968:25, 970:3, 970:12, 989:13, 996:24
**following** [13] - 974:11, 980:12, 982:8, 983:21, 985:24, 986:18, 988:3, 988:20, 989:5, 992:2, 992:16, 994:13, 995:10
**FOR** [4] - 936:1, 940:10, 943:18, 949:4
**forbids** [1] - 994:24
**foregoing** [1] - 999:4
**foreseeable** [1] - 981:2
**Forest** [1] - 944:1
**form** [7] - 958:14, 958:21, 974:16, 989:11, 989:12, 990:1, 993:16
**formal** [1] - 972:9

**formulation** [1] - 967:13
**forward** [1] - 954:9
**four** [3] - 941:2, 980:12, 995:10
**Fourth** [1] - 936:15
**fourth** [5] - 980:19, 984:5, 984:25, 992:12, 995:15
**Fracker** [1] - 978:1
**Fracker's** [1] - 978:5
**free** [2] - 954:2, 970:4
**Friedrich's** [1] - 957:19
**friend** [3] - 940:23, 942:11
**friends** [2] - 944:9, 944:11
**friendship** [1] - 976:5
**front** [1] - 950:11
**full** [2] - 959:20, 976:3
**function** [7] - 970:7, 970:14, 986:11, 986:20, 987:19, 987:22, 987:23
**functions** [5] - 986:2, 992:8, 992:11, 992:24, 993:2
**furtherance** [2] - 984:4, 984:13

# G

**gather** [1] - 968:14
**gender** [1] - 970:22
**general** [1] - 969:20
**gentlemen** [3] - 939:2, 953:19, 969:12
**George** [2] - 940:8, 940:15
**GEORGE** [2] - 937:3, 940:10
**given** [6] - 961:2, 962:6, 962:14, 962:17, 962:21, 964:3
**good-faith** [2] - 990:18, 990:22
**GOVERNMENT** [1] - 949:4
**government** [54] - 939:1, 939:3, 939:10, 939:12, 939:17, 949:1, 953:17, 953:18, 953:20, 955:6, 955:14, 955:21, 956:8, 957:2, 959:21, 961:12,

966:4, 967:3, 967:24, 968:1, 972:16, 972:21, 972:24, 973:2, 973:20, 975:12, 978:2, 978:3, 978:7, 978:19, 980:12, 981:1, 982:7, 983:3, 983:5, 983:20, 984:13, 985:14, 987:12, 987:18, 988:19, 989:4, 990:24, 992:2, 992:7, 992:10, 992:16, 992:23, 993:2, 994:12, 995:9, 996:12, 997:7, 997:16
**Government** [4] - 936:14, 937:10, 949:11, 951:8
**Government's** [1] - 951:5
**government's** [7] - 956:21, 957:14, 965:24, 967:5, 967:13, 973:7, 997:14
**grand** [8] - 956:17, 956:23, 956:24, 957:3, 957:8, 979:23, 995:7, 995:20
**graver** [1] - 973:16
**greater** [3] - 974:19, 975:10, 977:23
**green** [1] - 951:16
**ground** [2] - 974:10
**grounds** [25] - 969:4, 979:18, 979:20, 986:22, 987:9, 987:14, 987:20, 988:5, 988:9, 988:10, 988:14, 988:18, 989:2, 989:7, 989:16, 989:21, 991:11, 991:12, 991:18, 991:21, 991:25, 992:15, 993:6, 993:11, 994:6
**guess** [6] - 947:25, 948:2, 957:4, 963:14, 964:10, 967:2
**guesswork** [1] - 973:19
**guide** [1] - 953:25
**guidelines** [1] - 977:21

**guilt** [7] - 972:12, 972:13, 973:13, 973:20, 973:22, 977:14, 978:10
**guilty** [32] - 963:8, 972:17, 972:23, 973:1, 973:2, 980:10, 982:5, 982:16, 982:22, 983:8, 983:18, 985:7, 985:13, 985:23, 988:17, 989:1, 989:15, 989:18, 989:19, 989:20, 990:19, 990:20, 991:24, 992:14, 993:5, 993:7, 993:9, 994:11, 995:9, 996:19
**guys** [1] - 942:3

## H

**hand** [2] - 972:24, 974:2
**handle** [1] - 963:15
**hands** [2] - 962:16, 962:20
**happy** [1] - 946:17
**hard** [2] - 948:1, 997:22
**heal** [1] - 944:19
**hear** [1] - 976:16
**heard** [8] - 947:20, 948:8, 956:18, 957:22, 963:19, 969:18, 977:16, 978:1
**helpful** [1] - 998:4
**hesitate** [1] - 973:16
**highly** [1] - 973:6
**himself** [2] - 977:3, 985:12
**hold** [3] - 959:13, 977:12, 979:2
**holding** [1] - 963:16
**hole** [1] - 941:8
**home** [5] - 942:24, 943:4, 943:13, 948:20, 968:12
**honest** [1] - 973:11
**Honor** [36] - 938:3, 938:20, 939:1, 939:7, 940:7, 943:16, 947:6, 948:21, 948:23, 949:1, 949:9, 951:4, 954:24, 956:19,

958:25, 959:8, 959:9, 960:12, 960:20, 961:10, 961:13, 963:1, 963:4, 963:11, 963:17, 963:19, 963:25, 964:25, 965:24, 966:16, 968:2, 968:3, 968:7, 968:10, 968:19, 998:1
**HONORABLE** [1] - 936:10
**hope** [2] - 963:24, 966:19
**hostility** [1] - 976:6
**hour** [2] - 953:24, 954:10
**house** [2] - 947:18, 994:17

## I

**idea** [1] - 952:8
**identification** [3] - 955:17, 955:18
**identified** [1] - 983:14
**ignorance** [2] - 981:8, 990:14
**ignore** [5] - 970:3, 970:12, 971:2, 979:7, 979:10
**imaginary** [1] - 973:18
**immediate** [3] - 986:16, 988:7, 990:8
**impair** [2] - 976:9, 995:16
**impartial** [3] - 973:12, 974:25, 975:4
**impede** [10] - 939:14, 980:3, 980:14, 980:16, 980:19, 981:16, 985:20, 992:6, 992:23, 994:16
**impeded** [2] - 992:10, 993:1
**impedes** [1] - 981:21
**impeding** [2] - 981:20, 986:2
**implies** [1] - 973:9
**importance** [2] - 946:5, 946:15
**important** [2] - 973:17, 976:20
**impresses** [2] - 975:25, 976:1
**improbability** [1] - 976:24

**improper** [1] - 977:13
**improperly** [1] - 970:21
**improve** [1] - 976:9
**inadmissible** [1] - 955:23
**incident** [3] - 976:16, 985:21, 986:7
**include** [9] - 955:13, 955:15, 957:14, 957:17, 958:5, 963:11, 988:3, 989:3, 992:18
**included** [13] - 958:15, 958:18, 958:19, 958:20, 959:2, 959:7, 968:5, 968:6, 988:13, 989:3, 991:20, 992:18, 993:13
**includes** [6] - 958:15, 980:22, 989:23, 990:7, 994:19, 995:18
**including** [6] - 955:25, 965:18, 976:8, 981:10, 985:2, 990:16
**inconsistencies** [1] - 976:13
**inconsistency** [2] - 976:19, 976:21
**incorporate** [1] - 964:16
**incorporated** [1] - 959:3
**incrimination** [1] - 981:19
**independent** [1] - 997:17
**independently** [1] - 981:23
**indicate** [2] - 956:1, 996:5
**indicated** [1] - 971:1
**indicating** [1] - 970:25
**indicted** [1] - 967:5
**indictment** [17] - 963:25, 966:6, 972:9, 972:11, 979:13, 979:25, 985:18, 988:9, 991:2, 991:16, 994:9, 995:5, 996:15, 996:20, 996:21
**individual** [2] - 963:8, 981:21, 986:17
**indulgence** [1] - 960:21

**infer** [3] - 996:1, 996:6
**inference** [2] - 972:12, 977:14
**inferences** [2] - 972:1, 974:3
**influence** [1] - 996:20
**influenced** [1] - 970:22
**informed** [1] - 938:7
**inherently** [5] - 960:9, 960:10, 960:15, 961:23, 963:8
**injured** [1] - 941:7
**injury** [10] - 941:9, 941:16, 945:7, 945:8, 961:24, 965:3, 965:10, 966:11, 986:17, 991:8
**innocence** [2] - 972:15, 972:19
**innocent** [3] - 972:15, 976:17, 976:22
**inoperable** [1] - 964:17
**inquiry** [1] - 964:5
**instance** [1] - 962:1
**instances** [1] - 973:5
**instead** [1] - 982:24
**instituted** [2] - 980:24, 981:1
**instruct** [12] - 954:6, 954:23, 968:4, 968:12, 969:19, 970:9, 970:11, 979:12, 988:12, 989:9, 991:19, 993:3
**instruction** [15] - 953:22, 955:10, 955:11, 955:12, 955:17, 955:19, 957:14, 958:17, 958:23, 959:11, 959:16, 960:8, 965:2, 995:4
**INSTRUCTIONS** [1] - 969:17
**Instructions** [1] - 937:12
**instructions** [28] - 953:24, 954:15, 956:12, 956:13, 958:6, 958:18, 967:21, 969:15, 969:23, 969:24, 970:1, 970:2, 970:4, 970:5, 970:11, 989:12, 994:2, 994:4, 994:22, 995:22, 995:24,

996:22, 996:25, 997:2, 997:3, 997:22, 998:1
**instrumentality** [1] - 987:25
**integrity** [1] - 995:16
**intended** [5] - 971:14, 972:5, 982:9, 982:13, 986:1
**intending** [3] - 961:3, 965:16, 982:20
**intends** [6] - 964:23, 964:24, 965:4, 966:22, 991:9, 996:7
**intent** [18] - 939:14, 963:12, 964:20, 965:19, 966:12, 980:16, 983:1, 984:10, 984:25, 985:11, 992:6, 992:22, 994:16, 994:23, 995:16, 995:24, 996:2, 996:5
**intention** [1] - 962:1
**intentional** [1] - 976:22
**intentionally** [3] - 983:16, 996:8
**intentions** [5] - 961:2, 962:6, 962:17, 962:22, 965:14
**interactions** [1] - 962:22
**interest** [2] - 976:5, 978:17
**interfere** [1] - 985:20
**interferes** [1] - 993:20
**interfering** [1] - 986:2
**interrupts** [1] - 993:22
**interstate** [2] - 986:19, 986:21
**introduce** [1] - 943:21
**Investigation** [1] - 977:18
**investigation** [8] - 949:17, 956:17, 956:23, 956:24, 957:3, 957:8, 979:23, 995:7
**invited** [2] - 941:19, 942:1
**invoking** [1] - 981:18
**involve** [2] - 958:15, 981:17
**involved** [4] - 960:18, 964:7, 976:6, 985:4
**involving** [3] - 960:13, 961:16, 986:15
**iron** [1] - 953:24
**issue** [3] - 957:19,

965:7, 965:20
**issues** [1] - 969:22
**item** [7] - 962:3, 962:9, 962:13, 962:14, 962:16, 962:20, 962:23
**itself** [1] - 965:21

# J

**Jacob** [1] - 978:1
**jams** [1] - 968:24
**January** [21] - 941:19, 941:20, 942:13, 942:21, 942:25, 943:7, 947:19, 947:22, 948:4, 948:11, 948:14, 950:9, 950:16, 950:18, 952:3, 957:6, 960:13, 986:23, 987:8, 987:13, 987:21
**Jenkins** [1] - 968:17
**joint** [1] - 981:5
**jostling** [1] - 993:21
**judge** [3] - 978:6, 995:19, 995:20
**JUDGE** [1] - 936:11
**Judge** [1] - 957:19
**judges** [2] - 970:15, 975:15
**judging** [1] - 975:18
**judgment** [5] - 939:8, 939:23, 975:22, 977:9, 978:23
**jurors** [3] - 971:7, 971:13, 973:4
**Jury** [1] - 937:12
**jury** [35] - 938:22, 938:23, 939:9, 940:1, 940:13, 943:22, 953:22, 954:11, 956:17, 956:23, 956:24, 957:3, 957:8, 958:7, 958:14, 958:20, 958:21, 959:2, 963:14, 967:15, 968:12, 968:17, 969:2, 969:11, 969:14, 970:5, 970:14, 971:9, 974:24, 979:23, 991:13, 995:7, 995:20, 997:5, 997:20
**JURY** [2] - 936:10, 969:17

**justified** [1] - 972:1

# K

**Kate** [1] - 949:2
**KATHRYN** [2] - 937:6, 949:4
**kids** [1] - 951:23
**kind** [4] - 946:2, 947:25, 972:11, 973:14
**knowing** [2] - 985:5, 996:1
**knowingly** [18] - 980:17, 981:6, 981:9, 983:16, 984:5, 985:25, 988:23, 989:8, 990:10, 990:11, 990:15, 992:6, 992:22, 994:1, 994:18, 995:3, 995:14, 995:21
**knowledge** [6] - 952:16, 974:1, 984:24, 995:24, 996:2, 996:5
**known** [3] - 941:3, 944:14, 983:12

# L

**L-A-V-A-D-O** [1] - 943:24
**labor** [1] - 958:7
**lack** [1] - 973:11
**lacrosse** [2] - 960:14
**ladies** [3] - 939:2, 953:19, 969:12
**language** [4] - 958:25, 964:17, 964:21, 967:14
**laptop** [1] - 968:16
**large** [2] - 991:2, 991:5
**last** [18] - 942:25, 943:23, 946:18, 950:9, 955:25, 959:10, 959:15, 959:21, 960:4, 960:5, 965:1, 965:18, 966:9, 966:21, 966:22, 983:4, 990:24
**LAVADO** [2] - 937:5, 943:18
**Lavado** [6] - 943:17, 943:23, 943:25, 945:12, 947:17,

948:4
**law** [32] - 943:3, 943:7, 946:6, 946:14, 946:16, 946:24, 947:2, 947:22, 954:6, 969:19, 969:20, 970:9, 970:10, 972:18, 974:14, 974:15, 977:19, 977:24, 980:2, 984:23, 985:20, 985:22, 986:2, 986:5, 988:12, 991:19, 994:11, 994:24, 994:25, 995:1, 995:8
**lawful** [5] - 986:6, 988:22, 989:7, 990:19, 990:22
**lawfully** [1] - 985:21
**laws** [2] - 987:6, 987:24
**lawyer** [2] - 979:1, 979:2
**lawyer's** [2] - 979:3, 979:7
**lawyers** [6] - 953:23, 967:10, 972:4, 972:6, 978:24, 997:1
**lean** [1] - 944:25
**learn** [6] - 943:6, 946:5, 946:8, 946:15, 947:18, 947:21
**least** [1] - 984:14
**leave** [4] - 954:2, 957:7, 970:5
**left** [1] - 964:22
**leg** [5] - 941:8, 941:9, 941:16, 944:17, 945:7
**less** [3] - 944:13, 952:5, 966:18
**lesser** [10] - 958:15, 958:19, 958:20, 968:4, 968:6, 977:23, 988:13, 989:3, 991:20, 992:18
**lesser-included** [7] - 958:15, 958:19, 958:20, 988:13, 989:3, 991:20, 992:18
**liability** [1] - 965:25
**lie** [1] - 978:15
**life** [1] - 973:17
**lifted** [1] - 958:23
**light** [3] - 939:9, 966:16, 972:1

**likely** [2] - 954:9, 973:5
**likewise** [1] - 972:6
**line** [3] - 959:10, 963:3, 966:22
**listen** [1] - 942:4
**live** [3] - 940:16, 943:25, 944:1
**loaded** [1] - 968:17
**located** [1] - 994:20
**lodge** [3] - 954:21, 957:21, 957:23
**look** [1] - 954:19
**looked** [2] - 974:5, 974:9
**looking** [1] - 951:2
**lost** [1] - 959:19
**loud** [1] - 993:19

# M

**ma'am** [12] - 940:15, 942:14, 942:18, 942:20, 942:23, 943:5, 945:22, 945:25, 946:7, 948:5, 948:12, 948:15
**magistrate** [1] - 995:20
**main** [1] - 939:4
**man** [1] - 945:4
**manner** [14] - 939:22, 960:17, 961:23, 963:12, 963:13, 963:17, 964:24, 965:5, 966:13, 966:23, 970:8, 975:24, 991:9
**MARK** [1] - 936:17
**marking** [1] - 949:11
**material** [1] - 958:3
**mathematical** [1] - 973:21
**matter** [2] - 976:20, 999:5
**matters** [3] - 973:17, 975:20, 976:4
**mean** [5] - 945:7, 947:24, 947:25, 953:11, 967:2
**meaning** [8] - 939:3, 986:12, 986:13, 990:10, 993:24, 994:3, 994:21, 995:3
**meanings** [2] - 994:1, 995:21
**means** [10] - 951:19, 965:16, 974:15,

975:18, 981:4, 981:11, 981:14, 986:25, 987:22, 990:3
**members** [1] - 988:7
**memory** [7] - 971:5, 971:6, 971:11, 971:12, 971:14, 976:1, 976:7
**mental** [1] - 982:19
**mention** [1] - 957:4
**mentioned** [1] - 945:23
**mere** [1] - 953:11
**merely** [7] - 972:9, 977:24, 982:17, 982:23, 985:4, 985:5
**message** [2] - 951:19, 951:22
**met** [4] - 940:21, 944:6, 945:14, 947:7
**metal** [1] - 944:20
**Metropolitan** [2] - 977:17, 987:14
**might** [1] - 975:11
**mile** [6] - 951:24, 952:8, 952:12, 952:14, 952:15
**Miller** [1] - 957:15
**mind** [1] - 996:14
**minute** [1] - 951:24
**minutes** [6] - 938:5, 953:24, 954:14, 955:5, 997:10, 997:11
**misrecollection** [1] - 976:17
**missing** [1] - 968:5
**mistake** [2] - 981:8, 990:14
**mistakes** [2] - 969:1, 998:6
**moment** [1] - 961:10
**month** [4] - 940:25, 941:1, 941:2, 944:13
**monthly** [1] - 944:12
**months** [1] - 952:5
**morning** [9] - 941:25, 954:7, 969:2, 974:11, 997:10, 997:11, 997:19, 997:25, 998:6
**most** [2] - 939:9, 998:3
**motion** [2] - 940:1, 954:25
**motivated** [1] - 978:19
**motive** [1] - 976:2
**Mount** [1] - 940:17
**move** [1] - 939:7

**moved** [1] - 951:7
**movement** [2] - 986:9, 986:24
**moving** [2] - 956:12, 957:13
**MR** [15] - 938:20, 940:6, 953:2, 953:16, 955:7, 955:20, 956:5, 956:7, 957:2, 957:11, 957:23, 958:12, 959:5, 969:10, 997:8
**MS** [79] - 938:3, 939:1, 939:7, 940:2, 940:7, 940:12, 942:5, 942:7, 943:10, 943:11, 943:16, 943:20, 945:9, 945:11, 946:9, 946:12, 946:20, 947:4, 947:6, 947:13, 947:16, 948:16, 948:18, 948:23, 949:1, 949:6, 949:9, 949:15, 951:4, 951:6, 951:10, 951:12, 952:24, 953:17, 954:24, 955:2, 955:6, 955:14, 955:21, 956:9, 956:19, 956:21, 958:10, 958:25, 959:8, 959:9, 959:14, 959:20, 959:25, 960:2, 960:12, 960:20, 960:25, 961:10, 961:13, 961:25, 963:1, 963:19, 963:22, 963:24, 964:8, 964:14, 964:22, 964:25, 965:6, 965:24, 966:16, 966:19, 966:21, 967:2, 967:7, 967:8, 967:24, 968:2, 968:3, 968:9, 969:9, 997:7, 998:1
**must** [29] - 959:21, 972:10, 973:1, 973:7, 975:1, 975:2, 975:13, 977:12, 979:1, 980:11, 981:1, 981:11, 981:12, 982:6, 982:18, 982:24, 983:20, 984:15,

985:14, 985:23, 988:19, 989:4, 990:24, 992:1, 992:16, 994:12, 995:10, 997:3
**mutilate** [1] - 995:13

# N

**name** [5] - 940:13, 943:21, 943:23, 956:13, 973:9
**name's** [1] - 943:23
**named** [1] - 950:1
**natural** [2] - 980:17, 996:7
**nature** [4] - 974:24, 975:1, 981:7, 990:13
**necessarily** [3] - 962:14, 963:5, 975:5
**necessary** [5] - 969:3, 973:4, 983:4, 983:13, 996:13
**need** [11] - 953:13, 953:23, 954:14, 955:5, 955:18, 956:6, 965:20, 980:23, 984:18, 984:22, 997:10
**needs** [1] - 984:13
**never** [3] - 962:4, 972:18, 997:23
**next** [2] - 945:3, 953:22
**nexus** [1] - 962:10
**night** [2] - 997:19, 997:24
**night's** [1] - 997:18
**normal** [1] - 993:23
**note** [4] - 955:12, 959:14, 970:5, 971:15
**note-taker's** [1] - 971:15
**notebooks** [1] - 971:8
**noted** [1] - 957:25
**notes** [4] - 971:8, 971:10, 971:13, 971:14
**nothing** [11] - 942:5, 943:10, 943:11, 945:9, 947:8, 953:17, 967:24, 967:25, 968:9, 997:7, 997:8
**noticed** [2] - 958:14, 959:9
**number** [4] - 962:17, 975:6, 975:9, 975:10

**NW** [3] - 936:15, 936:19, 936:22

# O

**oath** [1] - 978:15
**object** [13] - 960:9, 961:23, 965:2, 965:3, 965:8, 965:9, 966:9, 966:10, 966:12, 979:4, 991:2, 991:7, 995:13
**object's** [1] - 995:16
**objected** [1] - 978:24
**objecting** [1] - 979:1
**objection** [14] - 946:9, 951:6, 955:13, 955:14, 956:21, 957:1, 957:9, 957:22, 957:23, 958:10, 958:12, 959:4, 969:10, 979:6
**objection's** [1] - 957:25
**objections** [5] - 954:21, 958:9, 958:24, 967:23, 979:2
**obligation** [1] - 978:12
**observe** [1] - 976:3
**observed** [1] - 975:20
**obstruct** [7] - 939:14, 980:3, 980:14, 980:16, 980:18, 981:16, 985:20
**obstructed** [2] - 986:8, 986:23
**obstructing** [4] - 980:1, 980:11, 981:19, 986:1
**Obstruction** [18] - 967:19, 979:14, 982:1, 982:2, 982:4, 982:6, 982:10, 982:12, 982:16, 982:22, 983:6, 983:18, 983:22, 983:25, 984:8, 984:10, 985:13, 995:6
**obstruction** [1] - 979:22
**obstructs** [1] - 981:21
**occurred** [2] - 992:9, 992:25
**occurs** [1] - 993:19
**OF** [3] - 936:1, 936:3, 936:10
**offense** [50] - 958:15,

961:17, 961:21, 962:6, 962:9, 962:11, 962:24, 964:2, 964:11, 965:13, 965:16, 972:22, 972:25, 980:5, 980:6, 980:8, 980:9, 980:24, 982:1, 982:11, 983:8, 983:9, 983:10, 983:20, 983:23, 984:4, 984:7, 984:10, 984:13, 984:15, 984:17, 984:19, 984:22, 985:6, 985:9, 985:12, 985:16, 988:13, 988:25, 989:3, 990:2, 990:20, 991:1, 991:20, 992:13, 992:18, 993:18, 994:12, 996:16
**offenses** [6] - 957:10, 979:12, 989:10, 989:13, 989:14, 993:4
**offered** [1] - 978:25
**Office** [1] - 936:15
**officer** [4] - 944:10, 977:25, 986:5, 988:1
**officer's** [2] - 977:19, 977:21
**officers** [1] - 962:22, 977:16, 985:20, 986:3, 986:5, 987:8, 987:10, 987:13, 987:15, 987:17
**Official** [19] - 967:19, 979:14, 982:1, 982:2, 982:4, 982:6, 982:10, 982:12, 982:17, 982:23, 983:7, 983:19, 983:22, 984:1, 984:8, 984:11, 985:13, 995:6, 999:3
**official** [28] - 939:15, 957:4, 957:5, 979:22, 980:1, 980:4, 980:11, 980:15, 980:16, 980:19, 980:22, 980:23, 980:25, 981:2, 981:4, 981:16, 985:21, 986:6, 986:19, 987:7, 987:10, 987:16, 992:8,

992:11, 992:24, 993:2, 995:17, 995:18
**often** [3] - 940:24, 944:11, 983:10
**old** [1] - 945:4
**one** [24] - 938:4, 944:6, 950:12, 952:14, 952:15, 953:11, 953:15, 959:9, 961:10, 961:13, 961:14, 961:16, 961:17, 961:22, 963:14, 966:15, 966:19, 973:6, 974:15, 974:23, 975:9, 984:21, 986:2, 996:19
**operation** [1] - 987:23
**opinion** [1] - 971:2
**opportunity** [3] - 954:16, 954:21, 976:3
**opposite** [1] - 975:11
**order** [18] - 960:14, 980:10, 982:5, 983:18, 985:23, 988:15, 988:17, 989:1, 989:9, 989:13, 989:25, 991:23, 991:24, 992:14, 993:3, 993:16, 994:11, 995:8
**orderly** [6] - 970:8, 992:7, 992:10, 992:23, 993:1, 994:17
**ordinarily** [1] - 995:25
**origin** [1] - 970:22
**originally** [2] - 944:15, 944:19
**otherwise** [3] - 957:9, 985:12, 990:4
**outcome** [1] - 976:5
**outset** [1] - 970:7
**outside** [3] - 942:16, 987:2, 987:3
**overseas** [2] - 944:16, 945:18
**overturn** [1] - 962:18
**own** [6] - 938:10, 944:24, 971:5, 971:12, 971:14, 971:15
**owned** [1] - 949:17

## P

**p.m** [10] - 936:7, 938:23, 954:11, 955:3, 968:22, 969:11, 997:20, 998:7
**pack** [3] - 951:24, 952:8, 952:13
**page** [6] - 959:13, 959:14, 959:20, 968:7, 968:9, 969:3
**pages** [1] - 999:4
**papers** [1] - 957:24
**paragraph** [2] - 959:20, 960:3
**parallel** [1] - 956:14
**paraphrase** [1] - 967:21
**part** [4] - 946:18, 958:21, 979:11, 984:19
**participated** [1] - 985:16
**participation** [1] - 984:14
**particular** [7] - 958:5, 958:8, 962:24, 970:1, 974:17, 991:4
**parties** [10] - 956:1, 958:8, 969:5, 971:20, 971:21, 986:18, 986:21, 987:7, 987:19, 991:10
**parts** [1] - 984:21
**party** [1] - 979:3
**pass** [1] - 949:9
**passed** [1] - 982:19
**patience** [1] - 954:10
**pending** [2] - 980:24, 980:25
**people** [5] - 947:1, 949:23, 976:6, 976:15, 983:13
**performance** [2] - 986:6, 986:11
**performed** [3] - 984:3, 984:5, 984:12
**period** [1] - 952:20
**periods** [1] - 941:13
**perjury** [1] - 978:14
**permitted** [4] - 971:7, 971:24, 974:18, 978:7
**person** [28] - 953:6, 965:4, 965:10, 966:11, 972:10, 973:15, 974:5,
975:25, 981:6, 981:15, 983:7, 983:8, 983:9, 983:10, 983:11, 983:17, 986:17, 990:4, 990:7, 990:11, 990:18, 991:8, 993:19, 993:20, 993:21, 994:23, 996:1, 996:7
**personal** [1] - 971:15
**persons** [2] - 985:4, 986:16
**pertains** [1] - 976:20
**phase** [1] - 984:19
**phases** [1] - 984:22
**phone** [3] - 949:25, 950:15, 950:20
**phones** [2] - 949:17, 950:13
**phrase** [2] - 960:5, 965:18
**physical** [2] - 950:25, 952:19
**physically** [1] - 952:17
**pick** [1] - 946:18
**piece** [1] - 944:16
**place** [2] - 987:2, 987:3
**Plaintiff** [1] - 936:4
**plan** [3] - 942:2, 942:3, 954:7
**planning** [1] - 954:4
**plans** [1] - 982:23
**play** [1] - 979:11
**plays** [1] - 964:20
**plea** [6] - 978:1, 978:7, 978:11, 978:13, 978:18, 978:21
**point** [6] - 945:24, 962:2, 962:5, 963:18, 966:16, 967:3
**pointed** [2] - 963:6, 966:4
**points** [1] - 987:2
**Police** [5] - 977:17, 987:9, 987:14, 987:16
**police** [12] - 940:21, 944:5, 944:9, 944:24, 945:24, 946:5, 946:13, 946:15, 946:21, 946:25, 947:7
**Police's** [1] - 988:4
**portion** [1] - 970:1
**posed** [1] - 946:22
**posted** [1] - 990:3
**potentially** [4] -
960:25, 962:16, 966:1, 967:15
**pound** [1] - 951:24
**power** [1] - 987:5
**powerful** [1] - 973:7
**practice** [1] - 958:5
**prejudice** [2] - 970:20, 977:5
**prejudiced** [1] - 977:4
**preliminary** [1] - 969:23
**preparation** [1] - 982:24
**present** [2] - 948:6, 985:5
**presentation** [1] - 953:21
**presented** [2] - 974:21, 975:3
**president** [3] - 988:6, 990:8, 990:9
**president's** [1] - 942:4
**presumed** [1] - 972:14
**presumption** [1] - 972:15
**pretty** [2] - 941:17, 996:23
**previously** [1] - 983:24
**principal** [1] - 983:12
**printer** [1] - 968:24
**privilege** [1] - 981:19
**probability** [1] - 976:24
**probable** [3] - 973:6, 980:18, 996:7
**problem** [1] - 947:5
**problems** [1] - 967:25
**Procedure** [1] - 939:9
**proceed** [1] - 955:6
**Proceeding** [18] - 967:20, 979:14, 982:1, 982:2, 982:4, 982:6, 982:10, 982:12, 982:17, 982:23, 983:7, 983:19, 983:23, 984:1, 984:8, 984:11, 985:14, 995:6
**proceeding** [25] - 939:15, 957:5, 957:6, 962:12, 979:22, 980:2, 980:4, 980:11, 980:15, 980:16, 980:19, 980:22, 980:23, 980:25, 981:2, 981:4, 981:16, 981:18,
981:20, 981:22, 981:23, 995:17, 995:18
**Proceedings** [1] - 936:25
**proceedings** [3] - 956:25, 998:7, 999:5
**process** [2] - 953:22, 993:23
**produce** [1] - 972:19
**produced** [1] - 936:25
**prohibited** [1] - 962:14
**proof** [2] - 965:15, 973:7, 994:25
**proper** [1] - 979:1
**properly** [1] - 971:17
**property** [1] - 986:17
**proposal** [1] - 965:24
**propose** [2] - 966:8, 966:19
**proposed** [6] - 954:15, 955:11, 955:12, 957:15, 957:18, 958:18
**pros** [1] - 938:13
**prosecution** [7] - 956:17, 956:23, 956:24, 978:4, 978:14, 979:23, 995:7
**prosecution's** [1] - 963:6
**protect** [1] - 978:13
**protected** [7] - 986:11, 986:19, 987:19, 987:22, 988:2, 990:5, 990:7
**protection** [2] - 988:4, 988:6
**prove** [20] - 939:18, 959:21, 961:25, 962:6, 962:10, 962:23, 965:12, 965:14, 965:16, 972:19, 972:25, 973:4, 973:20, 973:22, 981:1, 983:3, 985:10, 985:14, 990:24, 995:10
**proved** [13] - 939:15, 975:12, 980:12, 982:7, 982:18, 983:20, 988:20, 989:4, 992:2, 992:16, 994:12, 995:25, 996:12
**proven** [3] - 971:25, 972:17, 972:21
**proves** [1] - 939:13
**provide** [2] - 963:1, 969:24
**proving** [2] - 973:2, 974:15
**proximity** [2] - 992:5, 992:21
**public** [1] - 986:14
**publish** [1] - 951:10
**purpose** [5] - 962:3, 981:12, 984:6, 985:11, 986:1
**purposes** [2] - 954:4, 965:20
**pursuant** [2] - 939:8, 978:2
**put** [3] - 939:13, 950:11, 957:2
**putting** [1] - 962:18

## Q

**questions** [8] - 947:17, 948:18, 952:24, 953:16, 970:4, 970:9, 972:6, 974:23
**quick** [1] - 968:3

## R

**race** [1] - 970:22
**radio** [1] - 956:3
**rather** [1] - 975:6
**reach** [3] - 974:25, 989:22, 993:12
**reaching** [2] - 974:20, 975:3
**read** [12] - 951:22, 954:16, 955:5, 959:1, 960:7, 963:4, 968:25, 969:3, 969:15, 996:24, 997:23, 998:3
**reads** [1] - 965:8
**ready** [3] - 955:6, 955:7, 969:14
**realizes** [3] - 981:6, 990:11, 990:12
**really** [2] - 955:18, 963:23
**reason** [4] - 973:10, 973:19, 977:13
**reasonable** [37] - 939:9, 939:10, 959:22, 971:25, 972:17, 972:22, 972:25, 973:3, 973:8, 973:9,

973:14, 973:15,
973:22, 974:3,
975:13, 978:11,
980:13, 981:1,
982:7, 982:18,
983:15, 983:21,
985:10, 985:15,
985:24, 988:20,
989:5, 989:22,
990:21, 990:25,
992:3, 992:17,
993:12, 994:13,
995:11, 996:13
**reasonableness** [1] -
976:23
**reasonably** [1] - 981:2
**reasons** [3] - 939:23,
962:17, 977:13
**rebuttal** [3] - 949:2,
953:18, 997:15
**recalled** [1] - 975:20
**receive** [2] - 972:3,
977:9
**RECEIVED** [1] - 937:9
**received** [3] - 951:9,
996:5, 996:10
**recently** [1] - 945:1
**Recess** [2] - 955:3,
968:22
**recognize** [1] - 950:12
**recollection** [2] -
976:1, 976:18
**recollections** [1] -
976:11
**record** [6] - 954:22,
954:24, 957:16,
968:23, 995:13,
999:5
**recordings** [1] - 956:2
**red** [2] - 958:18,
967:17
**refer** [5] - 956:13,
969:7, 969:25,
970:1, 991:14
**reference** [1] - 971:4
**references** [4] -
959:16, 960:5,
967:4, 998:2
**referred** [1] - 994:5
**Reffitt** [1] - 957:20
**reflected** [2] - 989:25,
993:16
**reflection** [1] - 973:16
**reformulation** [1] -
956:22
**refuse** [3] - 970:12,
981:18, 981:22
**regard** [1] - 969:6
**regarding** [5] -
939:17, 957:3,

957:16, 968:6, 969:4
**regards** [2] - 956:16,
956:17
**relate** [1] - 958:4
**relation** [7] - 962:10,
962:24, 965:13,
965:15, 988:25,
991:1, 992:13
**relationship** [2] -
940:22, 944:7
**relevant** [1] - 996:11
**rely** [1] - 971:13
**remain** [2] - 938:8,
990:23
**remained** [3] - 988:21,
989:6, 990:15
**remaining** [9] -
979:18, 988:8,
988:10, 988:13,
988:18, 989:2,
989:20, 989:20,
989:25
**remains** [1] - 972:15
**remember** [7] - 943:1,
944:17, 944:20,
944:22, 945:1,
945:4, 976:9
**reminded** [1] - 961:14
**remove** [2] - 955:22,
956:10
**renamed** [1] - 967:19
**renaming** [1] - 957:10
**render** [1] - 964:17
**renew** [1] - 954:25
**renumber** [1] - 956:11
**repeat** [2] - 946:19,
969:22
**replace** [1] - 971:12
**report** [2] - 950:12,
950:23
**reported** [1] - 936:25
**Reporter** [2] - 936:21,
999:3
**represents** [1] - 979:3
**require** [5] - 964:5,
972:18, 974:19,
983:2, 994:25
**required** [6] - 961:20,
964:8, 969:15,
973:20, 984:24,
996:6
**requirement** [1] -
984:25
**requirements** [1] -
983:21
**requires** [1] - 964:16
**research** [2] - 954:4,
997:18
**reserve** [1] - 939:25
**resolved** [1] - 954:18

**respect** [15] - 956:23,
957:16, 958:13,
958:22, 979:15,
979:23, 982:15,
982:21, 986:18,
986:21, 987:7,
987:19, 991:10,
994:5, 996:20
**responsibility** [3] -
970:16, 971:3, 979:4
**rested** [2] - 939:3,
953:20
**restricted** [32] - 959:1,
959:6, 969:5, 969:7,
979:18, 979:19,
988:8, 988:10,
988:14, 988:18,
988:21, 989:2,
989:6, 989:16,
989:21, 990:3,
990:4, 990:15,
990:18, 990:23,
991:12, 991:15,
991:17, 991:21,
991:25, 992:5,
992:15, 992:21,
993:6, 993:10,
993:24, 994:6
**rests** [3] - 939:1,
948:24, 953:18
**results** [2] - 976:22,
986:16
**retired** [1] - 950:6
**return** [2] - 945:18,
996:17
**returned** [1] - 945:16
**returns** [1] - 940:1
**RISA** [1] - 936:14
**Robertson** [13] -
938:7, 939:11,
939:18, 940:18,
944:2, 964:1,
972:19, 972:23,
973:1, 973:2,
977:11, 988:17,
991:16
**ROBERTSON** [1] -
936:6
**Robertson's** [2] -
939:14, 972:12
**Rocky** [1] - 940:17
**role** [1] - 964:20
**ROLLINS** [16] -
936:17, 938:20,
940:6, 953:2,
953:16, 955:7,
955:20, 956:5,
956:7, 957:2,
957:11, 957:23,
958:12, 959:5,

969:10, 997:8
**Rollins** [11] - 936:18,
938:7, 938:10,
938:19, 939:5,
956:6, 957:1,
957:21, 958:11,
959:4, 962:25
**room** [2] - 970:6,
971:9, 991:13
**Room** [1] - 936:21
**RPR** [1] - 936:21
**rule** [2] - 970:9, 995:1
**ruled** [1] - 979:9
**rules** [2] - 969:20,
969:22
**Rules** [1] - 939:8
**ruling** [1] - 957:19
**run** [3] - 951:23,
952:9, 952:16
**running** [3] - 952:8,
952:11, 952:12
**runs** [1] - 956:3

## S

**satisfy** [1] - 984:25
**saw** [4] - 974:5, 974:8,
974:9, 974:10
**schedule** [3] - 938:2,
954:5, 954:9
**School** [2] - 952:11
**scientific** [1] - 973:21
**scope** [1] - 947:8
**screen** [1] - 950:11
**searched** [3] - 942:24,
947:19, 947:20
**seated** [1] - 938:24
**second** [11] - 960:3,
980:15, 982:11,
983:25, 986:4,
988:23, 989:7,
992:6, 992:22,
994:15, 995:14
**Secret** [4] - 977:18,
988:5, 990:5, 990:7
**section** [2] - 959:11,
959:12
**see** [8] - 940:24,
944:11, 954:10,
968:5, 968:7,
976:16, 997:24,
998:6
**seized** [1] - 943:3
**selecting** [1] - 974:23
**self** [1] - 981:19
**self-incrimination** [1]
- 981:19
**send** [6] - 951:20,
954:15, 968:12,

968:16, 970:5,
993:16
**sense** [4] - 958:17,
963:10, 963:17,
966:3
**sent** [3] - 951:19,
989:11, 991:13
**sentence** [10] -
955:25, 959:16,
960:4, 960:5, 965:1,
965:8, 965:11,
965:22, 966:9,
966:21
**sentencing** [1] - 978:6
**separate** [2] - 996:15,
996:17
**separately** [1] -
996:17
**serious** [6] - 952:19,
961:24, 965:3,
965:9, 966:11, 991:8
**served** [1] - 973:3
**Service** [3] - 977:18,
990:5, 990:7
**Service's** [1] - 988:5
**session** [2] - 981:5,
994:17
**SESSION** [1] - 936:8
**Seventh** [1] - 936:19
**several** [2] - 958:2,
963:3
**shifts** [1] - 972:18
**short** [2] - 938:7,
952:19
**shorthand** [1] -
936:25
**show** [2] - 984:12,
984:13
**showed** [1] - 939:20
**showing** [1] - 962:21
**shown** [1] - 977:3
**shows** [2] - 953:5,
985:8
**shrapnel** [1] - 944:16
**side** [5] - 954:16,
975:6, 975:9, 977:4,
978:25
**sides** [2] - 954:19,
955:9
**significance** [1] -
946:16
**significant** [1] -
946:25
**signify** [2] - 951:18,
952:17
**silent** [1] - 938:8
**simply** [6] - 956:22,
960:16, 960:23,
961:22, 989:20,
991:14

**sit** [1] - 997:21
**six** [1] - 979:14
**sleep** [2] - 974:10, 997:18
**slight** [1] - 966:25
**smaller** [1] - 975:9
**snow** [4] - 974:5, 974:7, 974:9, 974:10
**snowed** [1] - 974:12
**software** [1] - 949:20
**sole** [2] - 970:15, 975:15
**solely** [1] - 970:23
**soliciting** [1] - 984:6
**solution** [1] - 966:24
**someone** [2] - 950:1, 983:16
**sometimes** [4] - 944:13, 944:25, 978:24
**sorry** [7] - 946:18, 959:19, 959:20, 963:22, 964:22, 964:25, 968:24
**sort** [7] - 955:10, 956:15, 958:19, 964:5, 965:19, 965:20, 966:13
**Southeast** [1] - 994:20
**speaking** [1] - 947:2
**Special** [4] - 949:2, 949:7, 951:13, 952:7
**special** [1] - 949:16
**specific** [5] - 962:3, 969:21, 979:12, 995:1
**specifically** [1] - 939:12
**specified** [1] - 991:2
**spectator** [1] - 985:5
**speculate** [2] - 977:13, 979:8
**speculation** [1] - 973:19
**speech** [2] - 942:4, 948:2
**spell** [2] - 940:14, 943:22
**spoken** [1] - 938:10
**stage** [1] - 982:19
**stand** [3] - 938:17, 940:8, 943:17
**standard** [1] - 952:11
**start** [4] - 954:7, 969:20, 979:25, 997:14
**started** [3] - 941:6, 957:6, 997:19
**state** [5] - 943:21, 982:19, 987:1,

987:2, 996:14
**statement** [5] - 946:14, 953:5, 972:4, 978:14, 996:3
**STATES** [3] - 936:1, 936:3, 936:11
**States** [16] - 977:16, 977:18, 987:8, 987:11, 987:12, 987:16, 987:17, 987:18, 987:24, 987:25, 988:5, 988:6, 994:15, 994:19, 995:19
**statute** [5] - 956:15, 958:3, 961:20, 965:14, 967:14
**stay** [1] - 954:2
**stenotype** [1] - 936:25
**step** [5] - 953:22, 954:12, 982:11, 982:21, 983:2
**steps** [3] - 943:15, 948:22, 954:13
**stick** [25] - 939:18, 941:3, 941:5, 941:11, 941:15, 943:3, 943:7, 944:14, 944:22, 944:25, 945:2, 945:4, 945:6, 946:24, 947:10, 947:11, 947:22, 948:1, 953:13, 960:14, 960:15, 960:23, 963:16, 991:3, 991:5
**still** [5] - 951:23, 962:6, 962:9, 965:12, 998:2
**stip** [1] - 959:7
**stipulated** [8] - 969:6, 971:19, 971:22, 986:18, 986:22, 987:7, 987:20, 991:10
**stipulation** [5] - 959:1, 969:4, 969:7, 971:23, 994:5
**stipulations** [3] - 958:4, 958:6, 991:13
**Street** [3] - 936:15, 936:19, 994:20
**stressful** [1] - 952:22
**stricken** [2] - 955:23, 979:10
**strict** [1] - 965:25
**strike** [1] - 946:17
**strongly** [1] - 982:13
**struck** [1] - 955:24

**stuff** [1] - 941:16
**submit** [1] - 957:24
**submitted** [1] - 957:24
**substantial** [3] - 982:11, 982:21, 983:2
**substantive** [2] - 956:12, 980:6
**succeed** [1] - 985:17
**sufficient** [1] - 983:14
**suggest** [2] - 955:24, 966:4
**suggestion** [2] - 964:19, 965:7
**supported** [1] - 977:1
**surprise** [1] - 946:8
**surprised** [5] - 943:6, 947:17, 947:21, 947:25, 948:3
**surrounding** [2] - 976:8, 996:2
**suspect** [1] - 996:25
**sustained** [1] - 979:6
**sworn** [1] - 971:18
**SWORN** [3] - 940:10, 943:18, 949:4
**sympathy** [1] - 970:21

# T

**T.J** [12] - 940:20, 940:21, 940:22, 940:24, 941:19, 944:4, 944:7, 944:12, 944:14, 946:13, 946:14, 946:21
**taker's** [1] - 971:15
**tape** [1] - 956:2
**teachers** [1] - 944:6
**teeth** [1] - 941:25
**telegraph** [1] - 958:19
**temporarily** [1] - 990:5
**tendered** [1] - 949:14
**term** [14] - 967:16, 980:22, 981:4, 986:25, 990:3, 990:7, 990:10, 993:24, 994:1, 994:3, 994:19, 994:21, 995:3, 995:18
**terms** [5] - 953:12, 958:5, 994:22, 995:20, 995:23
**testified** [8] - 946:12, 946:20, 950:21, 974:6, 975:14, 975:19, 975:21,

976:4
**testify** [10] - 938:9, 938:10, 938:11, 955:16, 977:11, 977:15, 978:3, 978:20, 981:18, 981:22
**testifying** [2] - 975:6, 975:24
**TESTIMONY** [1] - 937:2
**testimony** [26] - 939:13, 939:19, 939:21, 948:20, 971:18, 971:19, 974:1, 974:7, 974:11, 975:9, 975:10, 975:14, 976:13, 976:14, 976:15, 976:24, 977:6, 977:8, 977:16, 977:19, 977:22, 977:23, 978:8, 978:9, 978:20, 978:22
**text** [1] - 949:23
**THE** [87] - 936:1, 936:10, 938:2, 938:6, 938:12, 938:13, 938:15, 938:16, 938:18, 938:19, 938:21, 938:24, 939:2, 939:25, 940:4, 940:9, 940:10, 943:12, 943:14, 943:18, 946:11, 946:18, 947:3, 947:5, 947:10, 947:14, 948:17, 948:19, 948:21, 948:25, 949:4, 949:13, 951:7, 951:11, 953:19, 954:12, 955:1, 955:4, 955:8, 955:15, 955:22, 956:6, 956:8, 956:10, 956:20, 957:1, 957:9, 957:12, 957:25, 958:11, 958:13, 959:4, 959:6, 959:13, 959:19, 959:24, 960:1, 960:7, 960:13, 960:22, 961:6, 961:11, 961:22, 962:25, 963:21, 963:23, 964:6,

964:10, 964:19, 964:23, 965:1, 965:23, 966:14, 966:18, 966:20, 966:25, 967:4, 967:9, 967:25, 968:8, 968:11, 968:19, 968:20, 968:23, 969:12, 997:9, 998:5
**the..** [1] - 964:22
**themselves** [3] - 966:6, 974:24, 984:23
**theory** [4] - 960:22, 960:23, 960:25, 962:12
**thereby** [1] - 981:19
**therefore** [1] - 965:14
**thereof** [3] - 987:2, 987:4, 988:11
**thinking** [2] - 982:20, 996:1
**third** [8] - 980:16, 984:3, 986:8, 988:24, 992:9, 992:25, 994:18, 995:14
**THOMAS** [1] - 936:6
**thoughtful** [1] - 973:16
**three** [4] - 941:2, 952:5, 985:24, 986:15
**throughout** [2] - 972:16, 972:18
**Thursday** [1] - 936:6
**today** [2] - 948:6, 968:13
**together** [1] - 962:18
**token** [1] - 938:9
**tomorrow** [5] - 954:7, 969:2, 997:1, 997:10, 997:14
**took** [4] - 968:24, 969:13, 982:11, 982:25
**toward** [1] - 982:12
**towards** [1] - 976:6
**trained** [3] - 946:1, 962:15, 962:20
**training** [1] - 961:2
**trainings** [1] - 944:23
**transaction** [1] - 976:16
**TRANSCRIPT** [1] - 936:10
**Transcript** [1] - 936:25
**transcript** [2] - 956:3, 999:4

**transcription** [1] - 936:25

**transcripts** [2] - 956:2, 956:4

**trial** [14] - 942:15, 948:6, 970:8, 970:17, 970:25, 971:7, 971:10, 971:17, 971:21, 972:16, 972:18, 979:6, 996:10, 997:21

**TRIAL** [1] - 936:10

**tried** [1] - 955:9

**trip** [2] - 943:13, 948:20

**truck** [1] - 945:2

**true** [2] - 973:5, 976:25

**truth** [4] - 973:6, 976:2, 977:7, 978:12

**truthful** [3] - 946:6, 947:1, 975:25

**truthfully** [2] - 975:19, 978:3

**trying** [2] - 947:24, 957:5

**turn** [1] - 978:8

**two** [10] - 938:4, 952:8, 954:19, 956:25, 962:18, 973:23, 976:15, 982:8, 995:24

**two-mile** [1] - 952:8

**type** [3] - 952:9, 952:16, 978:7

**types** [2] - 973:23, 978:18

**typos** [3] - 954:19, 967:23, 968:25

## U

**U.S** [12] - 936:15, 936:21, 986:22, 986:23, 987:9, 987:14, 987:15, 987:20, 987:21, 988:4, 994:19

**uncommon** [1] - 976:18

**undeniable** [1] - 982:25

**under** [10] - 952:22, 955:1, 962:12, 966:14, 976:11, 978:12, 978:15, 987:5, 987:24, 993:20

**understood** [2] - 946:23, 961:22

**undisputed** [1] - 971:23

**unimportant** [1] - 976:21

**uniquely** [1] - 962:20

**UNITED** [3] - 936:1, 936:3, 936:11

**United** [16] - 977:16, 977:18, 987:8, 987:11, 987:12, 987:16, 987:17, 987:18, 987:24, 987:25, 988:5, 988:6, 994:15, 994:19, 995:19

**unlawful** [3] - 981:11, 981:12, 981:23

**unless** [4] - 954:8, 968:5, 972:16, 990:21

**unnecessarily** [1] - 993:21

**unnecessary** [1] - 967:15

**unreasonableness** [1] - 976:23

**unreasonably** [1] - 993:19

**untethered** [1] - 962:9

**up** [10] - 941:8, 944:8, 944:16, 946:19, 949:9, 962:15, 965:7, 968:14, 996:9, 997:13

**usage** [1] - 966:5

**uses** [4] - 941:12, 945:6, 964:23, 965:4

**usual** [1] - 997:11

## V

**venture** [1] - 985:4

**verdict** [13] - 940:1, 971:2, 974:20, 974:25, 975:2, 975:4, 989:10, 989:12, 989:22, 990:1, 993:12, 993:16, 996:20

**verdicts** [1] - 996:18

**version** [2] - 963:2, 969:1

**versus** [1] - 960:9

**via** [1] - 972:9

**vice** [3] - 988:6, 990:8

**videos** [1] - 968:15

**viewed** [1] - 962:14

**violating** [1] - 995:2

**violation** [6] - 980:2, 985:22, 988:11, 991:19, 994:10, 995:8

**violations** [1] - 956:15

**violence** [1] - 986:15

**Virginia** [2] - 940:17, 944:1

**visiting** [1] - 990:6

**visual** [1] - 997:12

**vote** [3] - 979:16, 981:5

## W

**WAGNER** [24] - 936:18, 938:3, 939:7, 940:2, 940:7, 940:12, 942:5, 943:11, 943:16, 943:20, 945:9, 946:9, 947:6, 948:18, 948:23, 951:6, 954:24, 955:2, 963:1, 965:24, 967:2, 967:8, 968:3, 968:9

**Wagner** [7] - 947:5, 948:17, 954:23, 962:25, 965:23, 966:17, 966:25

**Wagner's** [1] - 964:20

**walking** [9] - 941:3, 941:5, 941:11, 944:14, 944:22, 945:6, 948:1, 952:12, 953:13

**Washington** [6] - 936:6, 936:16, 936:19, 936:22, 987:13, 994:20

**WAYNE** [2] - 936:21, 999:3

**Wayne** [2] - 999:9, 999:9

**weapon** [40] - 939:19, 939:21, 958:16, 958:23, 959:23, 960:9, 960:11, 960:15, 961:5, 963:9, 963:10, 964:2, 964:5, 964:11, 964:12, 964:15, 965:2, 965:9, 965:21, 966:1, 966:2, 966:7, 966:10, 988:11, 988:19, 988:24, 989:4, 989:17,

989:23, 991:1, 991:3, 991:6, 991:7, 991:18, 992:1, 992:13, 992:19, 993:7, 993:14, 994:3

**weighing** [1] - 976:19

**weight** [8] - 970:17, 972:2, 974:17, 974:18, 975:5, 977:8, 977:23, 978:23

**welcome** [1] - 969:12

**whereas** [2] - 956:16, 961:17

**whole** [3] - 970:3, 970:12, 997:4

**wholly** [1] - 987:4

**willfully** [3] - 994:18, 994:23, 994:25

**window** [2] - 974:5, 974:9

**wisdom** [1] - 941:25

**wish** [1] - 969:25

**wished** [2] - 971:7, 985:17

**witness** [36] - 940:5, 946:20, 946:23, 955:16, 973:25, 974:8, 974:9, 975:16, 975:17, 975:19, 975:24, 975:25, 976:2, 976:3, 976:4, 976:12, 976:13, 976:24, 977:1, 977:3, 977:6, 977:7, 977:8, 977:22, 977:24, 978:9, 978:11, 978:13, 978:16, 978:19, 978:21, 979:9, 981:17, 981:22

**Witness** [3] - 943:15, 948:22, 954:13

**WITNESS** [5] - 940:10, 943:14, 943:18, 948:21, 949:4

**witness's** [5] - 974:1, 975:18, 975:24, 976:7, 976:9

**witnesses** [14] - 938:4, 938:5, 939:4, 970:19, 971:18, 975:6, 975:8, 975:9, 975:11, 975:14, 975:15, 975:22, 976:14, 978:18

**witnessing** [1] - 976:16

**wooden** [5] - 943:3,

943:7, 947:22, 991:2, 991:5

**word** [1] - 966:15

**words** [2] - 966:8, 985:2

**wordy** [1] - 966:18

**worse** [1] - 963:24

**written** [2] - 996:23, 996:25

**wrongdoing** [2] - 981:13, 981:14

## Y

**year** [4] - 941:1, 942:25, 945:14, 950:9

**yearly** [1] - 944:12

**years** [2] - 945:21, 945:22

**yourself** [1] - 943:21

## Z

**zero** [1] - 938:4