**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 1:21-cr-00034-CRC** |
| | : | |
| **THOMAS ROBERTSON,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT ROBERTSON'S MOTION FOR RELEASE PENDING RESENTENCING**

Defendant Robertson asks this Court to release him pending resentencing, invoking in support of his request 18 U.S.C. § 3143(b) and *Rosales-Mireles v. United States*, 585 U.S. 129 (2018).[1] Neither the statute nor case to which the defendant cites supports his motion, which is premature and, for the reasons set forth below, should be denied. As this Court found at the sentencing hearing, this defendant's conduct was the utmost serious and the 87-month sentence imposed was sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). The same is true today. The defendant has failed to show that he is likely to be resentenced to a term of imprisonment that is equal or less than the time already served plus the time needed to complete the resentencing process.

## I. Relevant Procedural and Factual History

The government need not belabor the procedural history but highlights here those facts unique to the defendant. The defendant, a former police sergeant for the town of Rocky Mount, Virginia, joined the mob – and recruited others – to attack the U.S. Capitol and disrupt the peaceful

[1] Defendant's motion, at 1, refers to "Rosales-Morales," an apparent misspelling of the petitioner's name.

transition of power on January 6, 2021. The defendant used his law enforcement training to block Metropolitan Police Officers attempting to hold back the mob and did so while carrying a dangerous weapon – a stick – in a threatening manner.

**a. The Defendant's Arrest and Remand**

On January 12, 2021, a Magistrate Judge in the District of Columbia issued an arrest warrant for the defendant for violations of 18 U.S.C. § 1752 and 50 U.S.C. § 5104. The defendant was taken into custody on January 13, 2021, in the Western District of Virginia, and released subject to certain conditions, consistent with 18 U.S.C. § 3142, including that he not violate any federal, state, or local law while on release, and that he refrain from possessing a firearm, destructive device, or other dangerous weapon. At the same hearing, the defendant was also ordered to relocate any firearms in his home by January 15, 2021. Nevertheless, four days later, while executing a search warrant at the defendant's house in connection with the Capitol riots charges, law enforcement discovered and seized eight firearms from the home. In addition, during the execution of the search warrant, law enforcement officers searched an out-building located on the property. Inside, officers noted large amounts of ammunition, as well as what appeared to be equipment used for re-loading ammunition.

On January 19, 2021, the defendant appeared before a magistrate judge in the District of Columbia and was again ordered not to possess a firearm, destructive device, or other weapon, and not to commit any new violation of federal, state, or local law as conditions of his pre-trial release and a status date for the ascertainment of counsel was set for February 2, 2021.

On January 29, 2021, a grand jury in the District of Columbia charged the defendant with violations of 18 U.S.C. §§ 1512, 2 (Obstruction of an Official Proceeding, and Aiding and Abetting), 1752(a)(1) (Entering and Remaining in a Restricted Building), 1752(a)(2) (Disorderly

and Disruptive Conduct in a Restricted Building), and 40 U.S.C. § 5104 (Violent Entry and Disorderly Conduct in a Capitol Building or Grounds).[2] Prior to this time, the pending charges against the defendant were misdemeanors; however, the Indictment added a felony violation of 18 U.S.C. § 1512 against the defendant.

On February 2, 2021, Robertson appeared before a magistrate judge in the District of Columbia for a hearing on the ascertainment of counsel and arraignment. He appeared at the hearing with his current counsel and entered a plea of not guilty. On February 25, 2021, the defendant was arraigned for a second time on the charges in the Indictment before the Court. The defendant acknowledged having read the Indictment, as well as having reviewed it with his attorney, before pleading not guilty to the charges.

On June 30, 2021, the United States asked the Court to revoke the defendant's pretrial release order because the day prior, following a lawfully authorized search of the defendant's residence, law enforcement discovered that the defendant violated his release conditions by possessing a loaded M4 rifle and a partially-assembled pipe bomb at his home, and by purchasing an arsenal of 34 firearms online and transporting them in interstate commerce while under felony indictment, in violation of 18 U.S.C. § 922(n).

A person who has been granted pretrial release and violated a condition of release "is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). The Court "shall enter an order of revocation and detention if, after a hearing," the Court finds that (1) there is either "probable cause to believe that the person has

[2] By superseding indictment, a violation of 18 U.S.C. § 1512(c)(1) was added on January 19, 2022, following the discovery that the defendant had destroyed his codefendants cell phone containing evidence of the previously charged conduct.

committed a Federal, State, or local crime while on release" or "clear and convincing evidence that the person has violated any other condition of release," and (2) either "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community" or "the person is unlikely to abide by any condition or combination of conditions of release." *Id*. § 3148(b). To determine whether there are any conditions that would prevent the person from fleeing or endangering the community, the Court must consider the factors listed in 18 U.S.C. § 3142(g)—i.e., the nature and circumstances of the offense charged, the weight of the evidence, the defendant's history and characteristics, and the nature and seriousness of the danger release would pose. 18 U.S.C. §§ 3148(b)(2)(A), 3142(g). However, "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b).

On July 28, 2021, following extensive briefing,[3] the Court detained the defendant pending trial. In doing so, the Court found that the defendant had not rebutted the presumption that he could not be safely released into the community. ECF No. 77 at 1.

**b. The Defendant's Conviction and Sentence**

On April 11, 2022, a jury found the defendant guilty on all six counts with which he was charged for his conduct on January 6, 2021, and the aftermath – Count One, Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2); Count Two, Interfering with Law Enforcement During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Count Three, Entering

---

[3] *See* ECF Nos. 30, 32 and 34.

or Remaining in a Restricted Building or Grounds with a Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); Count Four, Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); Count Five, Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Count Six, Obstruction of Justice through Destruction of Evidence, in violation of 18 U.S.C. § 1512(c)(1).

On August 17, 2022, this Court sentenced the defendant to 87 months of incarceration for Counts One, Three, Four and Six; 60 months of incarceration for Count Two and six months of incarceration for Count Five. He was also sentenced to 36 months of supervised release. At sentencing, the Court added three levels to Count One of the defendant's guidelines calculation under United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 2J1.2(b)(2) finding that his actions had substantial interference with the administration of justice, given "both the delay that the riot caused in the certification proceeding, which is the proceeding at issue, and the expenditure of substantial resources that was necessary to fix the damage that was done to the Capitol." 8/11/22 Sent. Transcript at 19. The Court also added eight-levels under § 2J1.2(b)(1)(B) because the defendant's offense involved causing or threatening to cause physical injury to a person in order to obstruct the administration of justice. Specifically, the Court found that the defendant a carried a stick in a manner capable of causing serious injury in other words, in threatening manner. *Id.* at 15.

**c. Defendant's Appeal**

On appeal, the defendant challenged his conviction under 18 U.S.C. § 1512, as reflected in Count One, which prohibits "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so." The jury was instructed that, in order to convict defendant

Robertson of violating § 1512(c)(2), it had to find beyond a reasonable doubt that he (1) "attempted [to] or did obstruct or impede an official proceeding"; (2) "acted with the intent to obstruct or impede the official proceeding"; (3) "acted knowingly with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding"; and (4) "acted corruptly." Trial Tr. 980:14-20, 981:6-8, ECF No. 111. The defendant took issue with only the "corruptly" element. He did not challenge any of the other elements or dispute that they were met.

On May 28, 2024, the D.C. Circuit affirmed the defendant's convictions, but vacated his sentence and remanded him for resentencing under the D.C. Circuit's decision in *United States v. Brock*. In *United States v. Brock*, 94 F.4th 39, 51 (D.C. Cir. 2024), the D.C. Circuit held that, for purposes of Sentencing Guideline 2J1.2, the phrase "administration of justice" does not encompass Congress's role in the electoral certification process. "Instead, Section 2J1.2's text, context, and commentary show that 'administration of justice' refers to judicial, quasi-judicial, and adjunct investigative proceedings, but does not extend to the unique congressional function of certifying electoral college votes." *Brock,* 94 F.4th 39, 51 (D.C. Cir. 2024).

The D.C. Circuit also ordered that, "on remand the district court may consider in the first instance any effect of the Supreme Court's" then-forthcoming "decision in *Fischer v. United States*, No. 23-5572 (U.S.), on [Robertson's] conviction under 18 U.S.C. § 1512(c)(2)." *United States v. Robertson,* 103 F.4th 1, 27 (D.C. Cir. 2023)

On June 28, 2024, after the D.C. Circuit remanded this case, the Supreme Court issued an opinion in *Fischer v. United States*, 144 S. Ct. 2176 (2024). *Fischer* held that Section 1512(c) does not cover "*all* means of obstructing, influencing, or impeding any official proceeding." The Court explained that, to prove a violation of Section 1512(c)(2), the government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records,

documents, objects, or other things used in the proceeding – such as witness testimony or intangible information – or attempted to do so. *Id.* at 9, 16. Whether Robertson's conviction under Section 1512(c)(2) is consistent with *Fischer*'s holding remains an open question.

**II. Legal Standards Governing Defendant's Motion**

The defendant's motion relies on 18 U.S.C. § 3143(b) which requires that persons who has been found guilty of an offense and sentenced to a term of imprisonment be detained pending appeal, unless the Court finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community and that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.[4]

Under 18 U.S.C. § 3143(a) a person pending sentencing shall be detained unless the Court finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released on personal recognizance, or subject to conditions set forth in Section 3142(b) or (c).

**III. The Defendant Should Not Be Released Pending Resentencing**

In support of his motion for release, the defendant provides only an "unofficial" calculation of the sentencing guidelines applicable to his offenses, presuming that the Court will not proceed

[4] The defendant also relies on *Rosales-Mireles v. United States*, 585 U.S. 129 (2018), in which the Supreme Court held that a miscalculation of a United States Sentencing Guidelines range that has been determined to be plain and to affect a defendant's substantial rights calls for a court of appeals to exercise its discretion under Rule 52(b) to vacate the defendant's sentence in the ordinary case. Here, the defendant has already been scheduled for resentencing.

to resentencing on Count One. This is an insufficient basis for the Court to grant his request.

First, the defendant's request is premature. The Court has ordered the probation office to prepare a revised sentencing guidelines calculation by July 25, 2024, given *United States v. Brock*, and the Supreme Court's decision in *Fischer v. United States*, No. 23-5572. *See* July 3, 2024, Minute Order. Sentencing memoranda are due by August 15, 2024, and resentencing is set for September 4, 2024. Once the revised guidelines are available to both parties, the defendant and government will each be able to put forth informed arguments on the effect of *Brock* and *Fischer* on the defendant's sentence. Indeed, with respect to *Fischer* claims, the government is still evaluating its prosecution of charges under 18 U.S.C. § 1512(c)(2) in January 6 cases, including in this case.

Second, even assuming *arguendo* that the defendant's motion were not premature, he has failed to show that his resentencing is "likely to result in a reduced sentence to a term of imprisonment less than the total of time already served plus the expected duration of the appeal process" (as required for relief under 18 U.S.C. § 3143(b)).[5] As of this filing, he has served approximately 36 months and two days of his 87 months sentence. The resentencing process will in all likelihood be resolved by September 4. The question, therefore, is whether the defendant's *Fischer* and *Brock* claims are likely to result in a reduced sentence of, approximately, 51 months.

Given the sentences imposed on the other counts of conviction and the evidence put forth at trial and sentencing, the answer is no. Even if *Brock* and *Fischer* result in a reduced guidelines calculation, at resentencing, the Court would still need to impose a sentence "sufficient, but not greater than necessary, to" give effect to the sentencing factors in 18 U.S.C. § 3553(a)." The

[5] Robertson relies on Section 3143(b) (ECF No. 165 at 2), but this case is pending resentencing, not appeal.

advisory sentencing guidelines are only one of several considerations for this Court in imposing a sentence – a fact the Court acknowledged at sentencing, reminding the parties that they were not "formulaic." 8/11/22 Sent. Tr. at 57. As this Court found at the sentencing hearing, and as remains true today, this defendant's conduct was extraordinarily serious and the 87-month sentence imposed was sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

For example, the Court, in imposing its new sentence, must consider the need for the sentence imposed to afford adequate deterrence (specific and general), and promote respect for the rule of law. The Court previously described defendant's post-arrest conduct – undisturbed by either *Fischer* or *Brock* – as an "aggravating factor," and questioned whether he could have any confidence that the defendant would not reoffend, suggesting that this was maybe the "primary consideration" to take into account. 8/11/22 Sent. Transcript at 49, 54. As the Court stated to the defendant at sentencing:

> "You know, I read [the defendant's post-offense statements], and it really seems like you think of partisan politics as war, you know, and that's just not the right way to think about it, and that you continue to believe these conspiracy theories about the election being stolen despite any evidence of that whatsoever. And I sincerely believe that you would likely answer a call to duty if you were called to go do something like this again, and that's the biggest consideration that this Court has to consider."

8/11/22 Sent. Transcript at 63. Nothing in the defendant's motion for release suggests he is any less likely to offend today than he was on January 6, 2021.

The Court also made significant findings about the nature and circumstances of the offense, another factor which must be considered at resentencing. The Court reflected in great detail on the seriousness of the charged and uncharged conduct in the sentencing hearing, tell the defendant:

> "You advocated for an armed rebellion and a counter insurgency to overturn the

> result. So when you invited Mr. Fracker and others to come to D.C. on January 6th, it was not just to listen to a speech or to protest. I believe that the jury was correct in finding that at least one of your motivations was to interfere with what was going on in Congress that day. And when you got into your truck, you were at least expecting some form of violence …
>
> You were one of the first ones up the West Terrace stairs, which was one of the most chaotic and violent scenes of that day, and we watched those videos many times, and they're very jarring and disturbing…You are also one of the first -- you were among the first wave of people in the Capitol…
>
> [Y]ou were not some bystander who just got swept up in the crowd and in the emotion, but you were an active and willing participant, and that you were there for the purpose of disrupting the count, which Mr. Fracker testified to and which the jury found…
>
> Even after having time to reflect on the effect of January 6th, you continued to advocate for violence in response to the purportedly stolen election… In June, a full six months after January 6th, you posted on a gun forum, 'I have learned very well that if you dip your toe into the rubicon, cross it. Cross it hard and violent and play for all the marbles.' And even more troubling coming from a former law enforcement officer after four officers were killed on January 6th and four more took their lives by their own hand later, you advocated more violence against law enforcement. You told Mr. Deacon, 'I can kill every agent they send for me for at least 2 weeks.' We've talked about whether that was hyperbole, whether that was just boasting, whether that was just something you were saying on Facebook, or Instagram, or wherever it was, but it wasn't just your words. It was also your actions. You destroyed evidence. You continued to possess weapons, including an M4 and an explosive device, in repeated violations of your release conditions, and last summer you ordered -- and we can call it an arsenal, we can call it a cache, we can call it whatever we want – numerous automatic weapons while you were under federal indictment in violation of not only this Court's orders but likely a federal law. And while you gave your neighbor your guns in response to a court order, you maintained ready access to them. And except for the destruction of the cell phones, *none of that is incorporated in the guidelines analysis.*

8/11/22 Sent. Transcript at 60-62 *(emphasis added).*

At resentencing, this Court will also be required to avoid causing unwanted sentencing disparities, and in furtherance of that goal, previously aligned the defendant's sentence with that of the defendant in *United States v. Reffitt*, 21-cr- 32 (DLF). 8/11/22 Sent. Transcript at 64-66 ("[O]n balance, I think the two cases are roughly notionally the same"). In that matter, the

sentencing judge noted that a sentence of 87 months' imprisonment in a Capitol riots case after *Brock* could be driven by the Section 3553 factors, even without applying 2J1.2(b)(1)(B) and § 2J1.2(b)(2). *United States v. Reffitt*, No. 21-CR-32 (DLF), 2024 WL 1577941, at *5 (D.D.C. Apr. 10, 2024) ("The Court could arrive at the same sentence of 87 months' imprisonment by applying the § 3553(a) factors. Upon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider ... such new arguments or new facts as are made newly relevant by the court of appeals," including the application of an "upward variance.") (internal citations and quotations omitted).

Additionally, a reversal of the § 1512(c) conviction could increase the aggregate sentence on the remaining counts:

> [In cases] involv[ing] multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction . . . the Government routinely argues that an appellate court should vacate the entire sentence so that the district court may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence. And appellate courts routinely agree.

*Dean v. United States*, 137 S. Ct. 1170, 1176 (2017). For example, the Court could find that, in light of the aggravating facts here, it is appropriate to run defendant's sentences on other counts concurrently.

Finally, the defendant has failed to show by clear and convincing evidence that he is not likely to pose a danger as required for release under either Sections 3143(a) or 3143(b). This Court has already found the defendant cannot be safely released into the community pending trial under any conditions and further found that the defendant failed to rebut a presumption that no condition or combination of conditions will assure that he will not pose a danger to the safety of any other person or the community. ECF No. 37 at 1, 12. The defendant continues to offer no evidence that the safety of the community can be assured upon his release.

The defendant has amply demonstrated his approval of violence to disrupt the peaceful transfer of power. And now, the country approaches the final months of what is likely to be another fiercely contested presidential election. If the defendant is released, the Court would be releasing him into the same volatile political climate and unrest that led him to commit his crimes in the first place. This presents an unacceptable risk to the safety of the community. At this juncture, therefore, the defendant's continued custody is both warranted and necessary.

In sum, there is ample information to support the sentence the defendant received, and premature for this Court to release him pending resentencing.

**III. Conclusion**

For the foregoing reasons, the defendant should not be released before his forthcoming resentencing date.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 415793

By: */s/ Elizabeth Aloi*
ELIZABETH ALOI
RISA BERKOWER
Assistant United States Attorneys
D.C. Bar No. 1015864 (Aloi)
NY Bar No. 4536538 (Berkower)
U.S. Attorney's Office, District of Columbia
601 D Street, N.W.
Washington, DC 20530
Phone: (202) 695-0610 (Aloi)
Elizabeth.Aloi@usdoj.gov